**STOP–A–FLAT CORPORATION**

v.

**ELECTRA START OF MICHIGAN, INC. and Charles E. Conwell.**

Civ. A. No. 80–2245.

United States District Court, E. D. Pennsylvania.

Feb. 2, 1981.

(Tr. 4–5).

\* \* \* \* \* \*

Sidney Bernstein, Philadelphia, Pa., for plaintiff.

Edward Stock, Philadelphia, Pa., for defendants.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

This lawsuit arose out of a distributorship agreement between plaintiff Stop-A-Flat Corporation and defendant Electra Start of Michigan, Incorporated. Plaintiff corporation sells a tire sealant product, known as Stop-A-Flat, across the United States through a network of distributors. For a period of time, defendant corporation was distributor of Stop-A-Flat in the state of Michigan and in certain counties in the states of Wisconsin, Indiana and Illinois. Plaintiff brought this action for defendants' alleged breach of certain provisions of the distributorship agreement and their alleged disparagement of plaintiff and its product. Defendants have filed a motion to dismiss the case for lack of in personam jurisdiction, or in the alternative to transfer the matter to the United States District Court for the Northern District of Illinois, Eastern Division, where defendant Electra Start has filed a related action against plaintiff. That motion is now before me, and for the

reasons discussed hereafter, I will grant it as to the individual defendant and deny it as to the corporate defendant.

This case is a diversity action; it is undisputed that defendants are not residents of Pennsylvania. Defendant Electra Start is a Michigan corporation with its principal place of business in that state while defendant Conwell is an individual residing in Michigan and is president of Electra Start. Service was effected upon the defendants pursuant to Fed.R.Civ.P. 4(d)(7) and the Pennsylvania "long-arm statute," 42 Pa.C.S. § 5321 *et seq.* That statute allows Pennsylvania courts to exercise long-arm jurisdiction over nonresidents "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with [the] Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S. § 5322(b). It is defendants' contention that they have not had sufficient "minimum contacts" with this forum to permit this court to exercise in personam jurisdiction over them.

■ Determination of the constitutionality [1] of the exercise of personal jurisdiction requires analysis of the nature and quality of a defendant's contacts with a forum. Certain guiding principles for such an analysis have emerged from the courts. For example, the defendant's contacts with the forum state must be such that maintenance of the suit "does not offend 'traditional notions of fair play and substantial justice'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citation omitted). Also, the defendant's contacts with the forum must have been substantial enough to make the exercise of jurisdiction over the defendant reasonable.[2] Further, the defendant

---

1. The due process clause of the Fourteenth Amendment limits the power of state courts to enter judgments affecting the rights of persons over whom they do not have personal jurisdiction. *Kulko v. Superior Court,* 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978).

2. Recently, in *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 564,

62 L.Ed.2d 490, the Supreme Court described this consideration as follows:

> Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining con-

must have "purposefully availed itself of the privilege of conducting activities within the forum state." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Moreover, defendant's relation with the forum state must be such that he should reasonably anticipate being haled into court there. *Shaffer v. Heitner*, 433 U.S. 186, 216, 97 S.Ct. 2569, 2586, 53 L.Ed.2d 683 (1977). Analyzing the facts now before me in terms of these principles, I find that the corporate defendant has had the requisite "minimum contacts" with the Commonwealth of Pennsylvania.

Although plaintiff and defendant offer somewhat different accounts of the relevant facts, under either version, defendant Electra Start has had sufficient contacts with this forum to justify this Court's exercise of jurisdiction over them. Plaintiff's allegations are as follows.[3] Defendant Conwell, as president of Electra Start, has come to Pennsylvania on several occasions in connection with business dealings with the plaintiff. On March 31, 1978, Charles Conwell and his son, another corporate officer of Electra Start, entered into negotiations with plaintiff concerning the distributorship agreement at issue in this suit. These negotiations took place at plaintiff's office in Pennsylvania and resulted in an agreement between the parties.[4] During September of 1978, defendant Conwell again visited Philadelphia and plaintiff's place of business in order to attend a business convention sponsored by plaintiff. On February 18, 1980, defendant Conwell was at plaintiff's Pennsylvania office for negotiations concerning a possible assignment of Electra Start's distributorship.

Carey and Tom Conwell, other officers and employees of the corporate defendant, were at plaintiff's office to negotiate an advertising program for the distributorship on or about November 11, 1978. In connection with the distributorship agreement between the parties, defendants made telephone calls to and sent mail to plaintiff at its Pennsylvania office. Also, the agreement signed by plaintiff and the corporate defendant states: "Pennsylvania Law is binding and shall be considered as the law of this contract and venue for any action commenced pursuant to this contract will be the Courts of the Commonwealth of Pennsylvania."

Under plaintiff's version of the facts, the corporate defendant, through its agent, has been in Pennsylvania to transact business with the plaintiff concerning the contract which is at the heart of the instant dispute. Although this presence has been occasional rather than frequent, within the context of this case, it has not been insubstantial. All of the visits of defendant Electra Start's agents described by plaintiff have been in connection with matters relevant to this litigation. By such conduct, the corporate defendant can be said to have availed itself of the privileges of acting within this forum. Moreover, given its activities and the clause in the agreement stating that in any dispute Pennsylvania law would govern and that venue would be in the Pennsylvania courts, Electra Start reasonably could have anticipated being haled into court here.

In support of this motion, defendants have submitted the affidavit of Charles Conwell. This affidavit does not directly refute plaintiff's claims regarding visits by the agents of the corporate defendant to Pennsylvania. Rather, Mr. Conwell avers the following:

> That the only contact that the Defendant corporation had with the State of Pennsylvania was that its Corporate officer visited the state in order to negotiate

venient and effective relief, at least when that interest is not adequately protected by the plaintiff's power to choose the forum; the interest of the interstate judicial systems in obtaining the most efficient resolution of controversies; and the shared interests of the several states in furthering fundamental substantive social policies. (citations omitted)

3. Affidavit of Jerome S. Kutner, president of plaintiff Stop-A-Flat, is attached to the plaintiff's memorandum in opposition to the motion to dismiss.

4. *See* copy of April 3, 1978 letter from plaintiff's president to Mr. Conwell attached to plaintiff's brief.

a contract with the Plaintiff to act as a distributor of Plaintiff's product in territories all outside of the State of Pennsylvania.

(paragraph 4 of Conwell's affidavit).

I find this statement to be somewhat ambiguous as it does not make clear whether the negotiations in Pennsylvania took place on a single occasion or on several.[5] At any rate, based on the undisputed fact that the president of Electra Start visited Pennsylvania at least once for the express purpose of negotiating the contract which is at dispute in this action, I believe that corporate defendant has had substantial enough contacts with this forum to allow this court to exercise jurisdiction over it.

The defendant corporation argues that since the allegations against it found in the complaint all concern activities occurring outside Pennsylvania and under the terms of the contract it was not required to do anything in Pennsylvania, requiring it to defend a suit in this Court is unreasonable. The principal legal authority relied upon as support for this theory is *Lakeside Bridge and Steel Co. v. Mountain State Construction Co., Inc.*, 597 F.2d 596 (7th Cir. 1979), a case where the Seventh Circuit, reversing a lower court, found in personam jurisdiction over a nonresident corporation to be lacking. *Lakeside Bridge*, however, is clearly distinguishable on its facts in that the defendant corporation in that case not only had no ongoing business in the forum State but it had never sent any officer, agent or employee there. In a more recent case, *Wisconsin Electrical Manufacturing Co. v. Pennant Products*, 619 F.2d 676 (7th Cir. 1980), involving facts which more closely mirror those presented here, the Seventh Circuit found in personam jurisdiction over a nonresident defendant on the basis of two visits to the forum State by agents of the defendant in connection with the business on which the claim was based.

 While plaintiff has met its burden to plead and prove the existence of in per-

sonam jurisdiction over the corporate defendant, it has not done so as to the individual defendant, Charles Conwell. Plaintiff does not dispute, as indeed it cannot, defendant's argument that this Court does not have personal jurisdiction over an individual defendant whose only contacts with the forum have been as an officer or agent of a corporation. *See, e. g., Brown v. Cosby*, 433 F.Supp. 1331, 1344 (E.D.Pa.1977). Citing the case of *Rusack v. Harasha*, 470 F.Supp. 285 (M.D.Pa.1978), it is plaintiff's contention that this Court has jurisdiction over defendant Conwell because the complaint alleges that he has defamed plaintiff, causing harm to plaintiff's reputation and business within this forum.

Given the facts of this case, however, I find this argument unpersuasive. In *Rusack*, the Court found that jurisdiction existed over the nonresident individual defendants, one of whom was an officer of the corporate defendant, because they had made the allegedly defamatory remarks about plaintiff as individuals not merely as agents or officers of the corporation. In the instant case, no allegation appears in the complaint which suggests that the purportedly defamatory remarks made by Mr. Conwell were made by him as an individual. Rather, the complaint states:

On several occasions and during the period of time covered by the aforesaid Distribution Agreement, individual defendant, *as agent of Corporate defendant*, did make representations to other distributors, and customers of Plaintiff and others that Plaintiff's product did not perform under any circumstances despite the use of the correct and specified amount of the product.

(paragraph 18, emphasis added).

Since all the allegations of the complaint concerning defendant Conwell refer to him as an agent or officer of Electra Start, the principles set forth in *Brown v. Cosby, supra*, control and the complaint must be dismissed as to Mr. Conwell for want of personal jurisdiction.

5. This ambiguity also appears in their memorandum in support of the motion where defendants state: "Defendant's contact with Pennsylvania was the fact . . . that its corporate officer had some negotiations in Pennsylvania. . . ." (p. 7).

Defendants have argued, in the alternative, that the case should be transferred to the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1404(a), on the ground that there is a related case pending there and that "it may be assumed that most, if not all persons" who will be witnesses in this matter reside in that district as it was defendants' franchise area.[6]

In evaluating a § 1404(a) motion, the plaintiff's choice of a proper forum is entitled to "paramount consideration," and the moving party must show that a balancing of interests weighs heavily in favor of transfer. *Shutte v. Armco Steel Corporation*, 431 F.2d 22, 25 (3d Cir. 1970). Defendants in this case have not met their burden. First, although there is a case pending in the Northern District of Illinois brought by the defendants against plaintiff which arguably is related to this action, it was filed after this case. Also, while it may be true that most of the potential witnesses for this lawsuit reside in that forum, the defendants have failed to identify even one of those witnesses. The simple assertion that the necessary witnesses probably reside in a certain forum does not justify the grant of a § 1404(a) motion. Further, the Distribution Agreement contains a clause stating that the parties agree that for any disputes arising out of the contract venue will be in the courts of Pennsylvania. While a forum selection clause is not always controlling, it is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972). The defendants here have failed to make such a showing of unreasonableness.

For the foregoing reasons, I enter the attached order granting defendant Conwell's motion to dismiss and denying defendant Electra Start's motion to dismiss and/or transfer.

**6.** 28 U.S.C. § 1404(a) provides:
For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

### ORDER

AND NOW, this 2nd day of February, 1981, upon consideration of defendants' motion to dismiss or to transfer the case, and plaintiff's opposition thereto, IT IS ORDERED that the motion to dismiss is DENIED as to defendant Electra Start and is GRANTED as to defendant Conwell. IT IS FURTHER ORDERED that the motion to transfer this case to the Northern District of Illinois is DENIED.