## PSC PROFESSIONAL SERVICES GROUP, INC.

v.

## AMERICAN DIGITAL SYSTEMS, INC., Peter D. Petroff, and Ralph G. Petroff.

### Civ. A. No. 81–4919.

United States District Court, E.D. Pennsylvania.

Jan. 19, 1983.

---

Richard E. Kurtz, Woodcock, Washburn, Kurtz, Mackiewicz & Norris, Philadelphia, Pa., for defendants Petroffs.

## MEMORANDUM

LUONGO, Chief Judge.

Plaintiff, PSC Professional Services Group, Inc. (PSG), brought this civil action charging the wrongful use of civil process, unfair competition and trade libel. The individual defendants, Ralph and Peter Petroff (the Petroffs), are alleged shareholders, officers and directors of the corporate defendant, American Digital Systems, Inc. (ADS).[1] Presently before me is the Petroffs' motion to dismiss for lack of *in personam* jurisdiction. Fed.R.Civ.P. 12(b)(2). Discovery having been ordered and completed on the jurisdictional issue,[2] I conclude for reasons hereafter stated that jurisdiction over the Petroffs is lacking. Accordingly, their motion to dismiss will be granted, and the complaint will be dismissed as to them.

PSG and ADS are competitors in the business of analyzing the infiltration of water into sewer lines. This action was brought by PSG after it had been sued for patent infringement (the infringement action) in federal court in North Carolina by two ADS affiliates—Apex, Inc. (Apex) and Condor Systems, Inc. (Condor).[3] Although Apex and Condor are not named as defendants in the instant action, PSG alleges that they conspired with or were directed by ADS and the Petroffs to file the infringement action for the purpose of interfering with PSG's ability to compete with ADS. PSG also alleges that defendants issued or caused to be issued a press release announc-

Philip M. Hammett, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for plaintiff.

1. Subject matter jurisdiction allegedly exists by reason of diversity of citizenship. 28 U.S.C. § 1332. Plaintiff alleges that it is a Minnesota corporation with its principal place of business in Pennsylvania; that ADS is an Alabama corporation with its principal place of business in Alabama; that the Petroffs are citizens of Alabama; and that the amount in controversy exceeds $10,000.

2. The record on this motion consists of the pleadings, the individual depositions of Ralph and Peter Petroff, and the affidavits of the Petroffs.

3. The infringement action was filed on July 2, 1981 in the United States District Court for the Western District of North Carolina. That action has since been transferred to this court and consolidated with the instant action. The Petroffs are not parties to the infringement action.

ing the filing of the infringement action. Turning to the various counts of PSG's complaint, Count I charges unfair competition and wrongful use of civil process through the issuance of the press release and the filing of the infringement action. Count II essentially asserts the same claim, but in addition, alleges that defendants conspired with Apex and Condor to wrongfully use civil process. Count III alleges that defendants tortiously interfered with PSG's contractual rights by orally threatening its present and prospective customers that they, too, would be the subject of patent infringement actions if they continued to deal with PSG. Specifically, PSG alleges in Count III that threats were made concerning contracts for infiltration studies with customers in California, Indiana and Texas. Finally, in Count IV, PSG alleges that defendants committed trade libel and business defamation by making false and misleading statements about PSG to PSG's present and prospective customers. The Petroffs are charged throughout the complaint with having personally taken part in the tortious conduct alleged. In addition, PSG alleges that the Petroffs were and continue to be instrumental in the establishment of ADS' marketing and sales practices.

### The Motion to Dismiss

■ The Petroffs first contend that jurisdiction over them generally is lacking because they were not present or domiciled in Pennsylvania when served with process and they have never consented to the exercise of personal jurisdiction over them by the courts of Pennsylvania. *See* 42 Pa.Cons. Stat.Ann. § 5301. Second, the Petroffs assert that long-arm jurisdiction under 42 Pa. Cons.Stat.Ann. § 5322 is likewise lacking because they, as individuals, have had no meaningful contacts with Pennsylvania and none of the allegations in the complaint states a claim arising out of any acts committed by them or ADS in Pennsylvania.

The Petroffs having properly raised the jurisdictional issue, the burden lies with PSG to establish that jurisdiction does in fact exist. *See Lucas v. Gulf & Western Industries, Inc.,* 666 F.2d 800, 805 (3d Cir. 1981). PSG asserts two bases for exercising jurisdiction over the Petroffs: (1) the instant action is based on acts personally engaged in by the Petroffs in Pennsylvania; and (2) jurisdiction exists over the Petroffs for tortious acts they committed as agents of a corporation subject to jurisdiction in Pennsylvania. I shall consider each of these alleged bases in turn.

In its supplemental memorandum in opposition to the motion to dismiss, PSG states: "[T]he depositions of defendants Ralph and Peter Petroff have now established that both Petroffs were personally present in this District and that, while here, they personally participated in the very matters upon which this consolidated litigation is based." Document 14, at p. 8. I do not accept PSG's statement that this litigation is based upon matters participated in by the Petroffs in Pennsylvania. After making that broad assertion, PSG proceeds to recite instances of *non-tortious* conduct engaged in by the Petroffs in Pennsylvania on behalf of ADS and all of which relate to the infringement action. It is irrelevant for present purposes that the infringement action may arise out of events in Pennsylvania in which the Petroffs participated in their capacity as agents for ADS. The gravamen of PSG's claim is the *filing* of the infringement action and the threats allegedly made against its customers that they might also be subjected to suit if they continued to deal with PSG. None of that alleged tortious conduct has been shown by discovery to have occurred in Pennsylvania. The sole alleged tortious action committed in Pennsylvania to which plaintiff can point is the service on PSG of the complaint in the infringement action. Even if the act of service were tortious, there is nothing in the record to indicate that the Petroffs actually made service.[4] Accordingly, there is no ba-

4. *Wasserstrom v. Thacker,* C.A. No. 81–3264 (E.D.Pa., March 26, 1982), on which PSG relies, is distinguishable. In *Wasserstrom,* the de-

fendant was charged with wrongfully instituting civil proceedings against a Pennsylvania resident in West Virginia. Judge Pollak of this

sis for concluding that this action arises out of tortious conduct committed by the Petroffs in Pennsylvania either individually or as officers or directors of ADS.

PSG next argues that the Petroffs are subject to *in personam* jurisdiction in Pennsylvania because ADS is subject to jurisdiction and Pennsylvania substantive law provides that corporate agents are personally liable for the torts they commit in their corporate capacities. PSG's argument rests primarily on *Donner v. Tams-Witmark Music Library, Inc.*, 480 F.Supp. 1229 (E.D.Pa. 1979). In that case, a Pennsylvania plaintiff was granted a license to produce performances of *Porgy and Bess* by the corporate defendant following negotiations by telephone and correspondence between plaintiff in Philadelphia and a corporate officer in New York. After an alleged infringing performance in Philadelphia by the Philadelphia Orchestra, plaintiff sued the licensing corporation and the officer in Pennsylvania for fraudulent misrepresentation and for tortiously approving the infringing performance. Applying minimum contacts analysis, the court first found that the corporate defendant's contacts with Pennsylvania were sufficient to assert jurisdiction over it. Then, recognizing that Pennsylvania substantive law imposes personal liability on corporate officers who commit torts while acting in their corporate capacities, the court concluded:

> It would be anomalous, and would defeat the purposes of the law creating substantive liability, to permit a corporate officer to shield himself from jurisdiction by means of the corporate entity, when he could not interpose the same shield as a defense against substantive liability. Therefore we hold that [the officer's] allegedly tortious conduct in his capacity as president of [the corporate defendant] may be considered to determine whether the court has jurisdiction over [him] as an individual defendant. For the reasons stated above with respect to [the corporate defendant], we find that [the officer's] conduct includes sufficient contact with this forum to make [him] subject to the personal jurisdiction of this court.

480 F.Supp. at 1234 (footnote omitted).

■ It is essential to understand that *Donner* does not hold that Pennsylvania may assert jurisdiction over corporate officers simply by virtue of their participation in tortious activity on behalf of a corporation which itself is subject to jurisdiction in this state. Indeed, if that were so, officers of corporations that do business in Pennsylvania would be subject to suit here based upon torts, committed in their corporate capacities, which bear absolutely no relationship to the forum.[5] The *non sequitur*

---

court held that the defendant could be sued in Pennsylvania for that alleged tortious conduct under the "tort out/harm in" theory because defendant should have foreseen that institution of the West Virginia action would lead directly to the service of process on plaintiff (defendant in the West Virginia action) in Pennsylvania. *Id.*, slip op. at 2–3. PSG fails to recognize that the defendant in *Wasserstrom* was the very party who instituted the alleged wrongful civil action. In the instant case, the alleged wrongful civil action was commenced in North Carolina by Condor and Apex, not the Petroffs. Although the Petroffs, as agents of ADS, are alleged to have caused the institution of that action, the question of whether it would be fair to compel them to defend in Pennsylvania is different from whether it would be fair to force Condor and Apex to defend their conduct here. As discussed *infra,* I conclude that it would violate due process to subject the Petroffs to the jurisdiction of this court on the claims alleged in the complaint.

Furthermore, while I do not decide the issue, I doubt seriously whether the Petroffs can even be charged at this point with tortiously causing the wrongful institution of the infringement action since that action, now pending in this court, *see* note 3 *supra,* has not been terminated in PSG's favor. *See* 42 Pa.Cons.Stat.Ann. § 8351. Hence, accepting *Wasserstrom's* premise that the "tort out/harm in" theory is a sufficient basis for subjecting a non-resident defendant to suit in Pennsylvania for wrongfully suing a Pennsylvania resident in another state, no tort may as yet have been committed by the Petroffs on which to predicate the assertion of personal jurisdiction over them.

5. It is well-settled that, absent allegations that the corporate shield is a sham, jurisdiction over the corporation does not subject officers, directors and shareholders of the corporation to personal jurisdiction. *See, e.g., Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 906 (1st Cir.1980); *Weller v. Cromwell Oil Co.*, 504

flows from the confusion of well-established jurisdictional principles with substantive legal precepts and obviously is inconsistent with the reasoning in *Donner*. In my view, *Donner* stands for the proposition that all of a non-resident defendant's contacts with the forum, in whatever capacity, will be weighed in determining whether those contacts are, from a due process standpoint, sufficient to exercise jurisdiction over him for claims arising from those contacts. In other words, minimum contacts analysis does not discount a defendant's contacts with the forum simply because that defendant was acting at the time as agent for another.

I am not certain that I would agree with *Donner* that a person's contacts with the forum in a non-individual capacity are proper elements that weigh in the determination of whether that person is subject to jurisdiction. I am aware that at least two federal district court judges in Pennsylvania have held that a non-resident defendant may be sued here for tortious acts committed within this state while acting on behalf of another. *E.g., Lighting Systems, Inc. v. International Merchandising Associates, Inc.,* 464 F.Supp. 601 (W.D.Pa.1979); *Vespe Contracting Co. v. Anvan Corp.,* 433 F.Supp. 1226 (E.D.Pa.1977). I am also aware that contrary authority exists. *E.g., Techno Corp. v. Dahl Associates, Inc.,* 521 F.Supp. 1036 (W.D.Pa.1981). In the instant case, however, the complaint alleges and discovery reveals no tortious conduct in Pennsylvania by the Petroffs in *any* capacity. Rather, they are alleged to have committed torts on behalf of ADS outside the state which caused harm to PSG in Pennsylvania. Assuming, without deciding, that the alleged tortious conduct does bear on their amenability to suit in this state, I conclude that the exercise of jurisdiction over the Petroffs in this case would violate due process.

PSG's position is that due process would not be violated by asserting jurisdiction over the Petroffs under the "tort out/harm in" theory of long-arm jurisdiction. According to PSG, it was clearly and specifically foreseeable that the institution of the infringement action and the issuance of the press release would result in harm to its reputation in Pennsylvania, the state where it has its principal place of business. Furthermore, PSG contends that Pennsylvania has a strong interest in protecting the good will of corporations domiciled within its borders. Given this strong interest as well as the foreseeability of the harm in this state, PSG concludes that due process would not be violated by asserting jurisdiction over the Petroffs in this case.

The deficiency in PSG's argument is that it focuses totally on the so-called federalism concern of minimum contacts analysis. But, as the Supreme Court recently explained in *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 291–92, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980):

> The concept of minimum contacts, in turn, can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burden of litigating in a distant or inconvenient forum. And it acts to insure that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

PSG's emphasis on the latter function ignores the "fairness" concern, even though "[t]he primary consideration in the jurisdictional inquiry is that of fundamental fairness to the defendant." *DeJames v. Magnificence Carriers, Inc.,* 654 F.2d 280, 284 (3d Cir.), *cert. denied,* 454 U.S. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981). *See World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 292, 100 S.Ct. at 564.

Fundamental fairness militates strongly against the assertion of jurisdiction over the Petroffs on the claims alleged. Acting in their individual capacities, the Petroffs have not purposefully availed themselves of

---

F.2d 927, 929 (6th Cir.1974); *Wilshire Oil Co. v. Riffe,* 409 F.2d 1277 (10th Cir.1969); *Miller v. American Telephone & Telegraph Co.,* 394

F.Supp. 58, 64 (E.D.Pa.1975), *aff'd. without opinion,* 530 F.2d 964 (3d Cir.1976).

the privilege of conducting activities in this state. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Although they may have foreseen clearly and specifically that their conduct on behalf of ADS would cause harm to PSG in Pennsylvania, " 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. at 295, 100 S.Ct. at 566. In addition, it must be shown that defendants' conduct and connection with Pennsylvania are such that they should reasonably have anticipated being haled into court here. *Id.* at 297, 100 S.Ct. at 567. No such expectation is apparent in this case.

ADS conducts its operations throughout the United States. The Petroffs, as officers and directors of the corporation, presumably have the responsibility to exercise judgment in making corporate decisions. To the extent that their decisions may cause harm to others, it is conceivable that they, as decisionmakers, will be charged with acting unreasonably and hence, with responsibility for the harm inflicted. Indeed that is precisely the situation here. The Petroffs are charged with having caused institution of legal proceedings without probable cause. The question here is not whether they should be personally liable for their part in ADS' conduct. Rather, the issue is whether they may be sued in this state, or any state, merely because the harm resulting from their conduct occurs there. Without more, foreseeability of harm and actual harm within the state are not sufficient to permit exercise of jurisdiction over corporate officers for their participation in corporate activity. Were the law otherwise, officers of corporations operating in several states would be faced with a Hobson's choice. They must either disassociate themselves from the corporation or defend the propriety of their conduct in a distant forum. Since PSG has not demonstrated any other affiliations between the Petroffs and Pennsylvania, I conclude that jurisdiction is lacking.

I am not persuaded that *Paolino v. Channel Home Centers, Inc.,* 668 F.2d 721 (3d Cir.1981), on which PSG relies, compels a different conclusion. In *Paolino,* the plaintiff, a Pennsylvania resident, disclosed a trade secret to the corporate defendant under circumstances establishing a confidential relationship. Allegedly in breach of that relationship, the corporate defendant manufactured a device and sold it to a retailer in New Jersey who, in turn, offered it for resale in Pennsylvania. Addressing, in terms of *World-Wide Volkswagen,* both the federalism and fairness concerns of minimum contacts analysis, the court of appeals applied the tort out/harm in rationale and held that a federal district court in Pennsylvania could properly exercise jurisdiction over the corporate defendant for the alleged breach of trust. As to the federalism concern, the court of appeals observed that Pennsylvania had an interest in protecting its resident's state-created interest in intellectual property from willful conduct by the defendant which would ultimately destroy it. *Id.* at 724. The court then discussed the fairness to the defendant of litigating in the forum chosen by the plaintiff and concluded that it would not be fundamentally unfair to force it to defend in Pennsylvania. *Id.* at 725.

The *Paolino* court's reasoning on the fairness issue was somewhat vague, but the court of appeals subsequently clarified *Paolino* in *Horne v. Adolph Coors Co.,* 684 F.2d 255 (3d Cir.1982). In the latter case, a New Jersey resident commenced suit in federal district court in New Jersey alleging that Adolph Coors Co. (Coors) infringed upon his patent on a device for depressurizing beverage cans. *Id.* at 256. The court of appeals found the case indistinguishable from *Paolino* and, therefore, held that Coors was subject to jurisdiction in New Jersey. Analogizing to *Paolino,* the court explained that it was not unfair to force Coors to defend in New Jersey because it placed its product, contained in the infringing cans, in the stream of interstate commerce. *Id.* at 259–60. The same element existed in *Paolino;* the defendant, in breach of an agreement to maintain plaintiff's trade secret, manufactured and sold in interstate commerce a

device which incorporated plaintiff's trade secret. *See Paolino v. Channel Home Centers, Inc.,* 668 F.2d at 722–23.

In sum, the "tort out/harm in" theory was upheld as a valid basis for asserting personal jurisdiction over the non-resident defendants in *Horne* and *Paolino* because they had other affiliations with the forum state. In each case, the defendant manufacturers placed their products in the stream of interstate commerce with the expectation that they would be purchased by consumers in the forum state. In every real sense, the defendants benefited from the protections provided by the laws of the forum state. *See DeJames v. Magnificence Carriers, Inc., supra,* 654 F.2d at 285. Consequently, it was not fundamentally unfair for the forum to exercise jurisdiction over them. The Petroffs situation is far different. PSG has demonstrated no meaningful contacts between the Petroffs (as opposed to the corporate entities of which they were officers and directors) and Pennsylvania which would justify the exercise of personal jurisdiction over them. I conclude, therefore, that it would violate due process to compel them to defend this lawsuit in plaintiff's chosen forum.

Finally, PSG alleges no facts which would justify piercing ADS' corporate veil and, indeed, PSG makes no contention that it should be pierced. Accordingly, since the only link between the Petroffs and Pennsylvania is that they are officers, directors or shareholders of a corporation that has a place of business here, I conclude that there is no personal jurisdiction over them. Their motion to dismiss will be granted.