**SIMKINS CORPORATION**

v.

**GOURMET RESOURCES INTERNA-TIONAL, INC., et al.**

**Civ. A. No. 84–4046.**

United States District Court,
E.D. Pennsylvania.

Jan. 28, 1985.

Allan D. Windt, Spector, Cohen, Gadon & Rosen, Philadelphia, Pa., for plaintiff.

Robert A. Swift, Kohn, Savett, Marion & Graf, Philadelphia, Pa., for defendants.

## MEMORANDUM

GILES, District Judge.

All defendants, with the exception of Gourmet Resources International, Inc. ("Gourmet"),[1] have filed a motion to dismiss plaintiff's complaint for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2). For the following reasons, defendants' motion is granted and the complaint is dismissed as to these defendants.

## I. FACTS

This is a diversity action brought by Simkins Corporation ("Simkins") against six defendants. Of the five defendants who have filed this motion to dismiss, one is a corporation, one is a partnership and three are individual members of Gourmet's Board of Directors sued for actions taken in their corporate capacities.

Plaintiff alleges a complex interrelationship among and between the six named defendants. For the purposes of this motion, the salient relationships are as follows. Gourmet sells imported chocolates under the trade-name "Michel Guerard." Simkins supplied boxes and box wraps to Gourmet for use in packaging their gourmet-quality sweets. Paramount Capital Corporation ("Paramount") is a shareholder of Gourmet. Greenberg, Irwin and Weisinger ("Greenberg") is a New York partnership engaged in the practice of law. Greenberg provides legal representation for Gourmet. Plaintiff asserts that Greenberg is also a shareholder of Gourmet. Gordon Ewart is alleged to be either a controlling shareholder of Paramount or a shareholder who controls Paramount. Martin Stern is alleged to be both a shareholder and a director of Gourmet. Albert J. Pechenik is the President of Gourmet.

Although the thrust of plaintiff's action appears to be a failure to pay for goods sold and delivered to Gourmet, only the first two counts of the complaint are contractual in nature. Counts three through five of the complaint allege that Paramount, Greenberg, Ewart and Stern, as shareholders and/or directors of Gourmet, have breached their duty to Gourmet and its creditors by causing Gourmet, while it was insolvent, to satisfy the corporation's indebtedness to them in preference to the indebtedness owed to the corporation's creditors. The final count of the complaint states that Pechenik fraudulently misrepre-

---

1. Gourmet has voluntarily submitted to the jurisdiction of this court by appearance. *See* Defendants' Memorandum in Support of Its Motion to Dismiss at 1 n. 1.

sented to Simkins, through its President, Morton Simkins, that Gourmet would use the proceeds from a public offering of its stock to repay Simkins for credit Simkins had extended in reliance on such a promise.

■ Defendants filed their motion to dismiss for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2). Paramount, Greenberg, Ewart and Stern asserted that they had no contact with Pennsylvania. Pechenik argued that he had no personal contact with the Commonwealth other than in his corporate capacity through his affiliation with Gourmet. Plaintiff responded by stating that this court has personal jurisdiction over the movant-defendants by virtue of the Pennsylvania long-arm statute.[2] 42 Pa. Cons.Stat.Ann. § 5322(a)(4) (Purdon's 1981). Specifically, plaintiff asserts that each defendant has caused its tortious injury in Pennsylvania by his actions outside the Commonwealth.

In order to aid Simkins in discharging its burden of demonstrating sufficient contacts with the forum state, this court afforded the parties an evidentiary hearing on the issue of jurisdiction. *See Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*, 723 F.2d 357, 362 (3d Cir.1983). In response to the ruling of the Third Circuit in *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66–67 n. 9 (3d Cir.1984), this court advised the plaintiff that it could not

rest on mere allegations to respond to the jurisdictional defense raised, but rather, was required to establish jurisdictional facts through affidavits or other competent evidence. This court not only addressed the general issue of burden of proof, but also raised multiple weaknesses in plaintiff's evidence of forum-related contacts. Accordingly, I allowed the plaintiff thirty days to complete discovery on the limited issue of personal jurisdiction in order to buttress its actual proofs. Both parties were allowed an appropriate amount of time to prepare supplemental briefs.[3]

## II.  DISCUSSION

Pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, this court may exercise personal jurisdiction over the non-resident defendants to the extent the laws of Pennsylvania allow. The Pennsylvania long-arm jurisdiction statute, 42 Pa.Cons. Stat.Ann. § 5322(b) (Purdon's 1981), provides for jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States." The Pennsylvania courts have recognized that this provision makes the reach of the long-arm statute co-extensive with the scope of personal jurisdiction permitted by the due process clause of the United States Constitution. *Koenig v. International Brotherhood of Boilermakes*, 284 Pa.Super. 558, 426 A.2d 635, 640 (1980), *cited in Rees v.*

---

**2.** In its complaint, Simkins also asserted personal jurisdiction over the individual defendants by virtue of 42 Pa.Cons.Stat.Ann. 5301. *See* Complaint at ¶ 10. Each of the movant-defendants has filed an affidavit which presents unrefuted evidence that he was not a domiciliary of Pennsylvania at the time the complaint was filed, that he did not consent to be sued in Pennsylvania, and that he was not served with process within this jurisdiction. Therefore, plaintiff may not rely upon this provision of the Pennsylvania long-arm statute for the assertion of personal jurisdiction over the individual defendants.

**3.** Plaintiff alleges that its efforts to obtain favorable jurisdictional facts during the discovery period was stymied by the defendants' failure to comply with its discovery requests. To this end, plaintiff filed a Motion to Compel the Production of Documents one day after the close of the limited discovery period. This motion is also

before the court. In responding to plaintiff's motion, this court first notes that the parties used the opportunity to conduct discovery into the issue of personal jurisdiction not to enhance the quality of their respective briefs, but rather, to exchange unnecessary rhetoric. This court will deny plaintiff's motion for the following reasons: (1) the motion was filed *after* the close of discovery; (2) plaintiff failed to comply timely with Rule 24(f) of the Local Rules of Civil Procedure; and (3) plaintiff has failed to refute defendants' evidence that plaintiff caused its own delay in the discovery process. *See* Letter from Windt to Swift dated October 15, 1984, attached to Plaintiff's Supplemental Memorandum Against Defendants' Motion to Dismiss. Therefore, this court finds that any alleged noncompliance with plaintiff's discovery requests is irrelevant to its determination of the 12(b)(2) petition.

*Mosaic Technologies, Inc.*, 742 F.2d 765, 768 (3d Cir.1984). Because this court is not obliged to follow the Pennsylvania courts' interpretation of the United States Constitution, I am free to assess independently the constitutional permissibility of the exercise of jurisdiction over the foreign defendants in this case in accordance with the law of this circuit. *Empire Abrasive Equipment v. H.H. Watson, Inc.*, 567 F.2d 554, 556 n. 1 (3d Cir.1977).

In determining whether due process considerations permit the exercise of in personam jurisdiction, this court will follow the two-step inquiry which has been consistently applied by the Third Circuit. *See, e.g., Dollar Savings Bank v. First Security Bank of Utah, N.A.*, 746 F.2d 208, 212; *Schwilm v. Holbrook*, 661 F.2d 12, 14 (3d Cir.1981); *Dunnigan v. Silverthorn*, 542 F.Supp. 32, 33 (E.D.Pa.1982) (Giles, J.). *See also Procter & Schwartz v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 19, 323 A.2d 11, 15 (1974) (Pennsylvania courts constitutional analysis roughly parallels the inquiry followed by this circuit). First, I must determine whether the claim is related to, or arises out of, the defendant's contacts with the forum. If the claim does not arise out of or is unrelated to defendant's contacts with the forum, a plaintiff must demonstrate that the defendant maintained continuous and substantial forum affiliations ("general jurisdiction"). *Dollar Savings Bank, supra*, 746 F.2d at 212. On the other hand, if the claim arises out of or is related to a defendant's transaction or transactions in the forum, then the court must engage in minimum contacts analysis ("specific jurisdiction"). *Id.* This distinction between general and specific jurisdiction is critical because the former test requires a substantially stronger showing of forum contact than is required under the latter. *See Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir.1982).

Because there is insufficient evidence to sustain an ultimate finding that general jurisdiction exists as to any movant-defendant, our inquiry in this case is simplified.

The plaintiff has failed to allege or produce any evidence that either the corporate defendants, or the individual defendants acting in their corporate capacities, have had the "extensive and pervasive" forum-related activities required under the more stringent standards of general jurisdiction. *See Reliance Steel Products, supra*, 675 F.2d at 589. Further, defendants' pleading, briefs and affidavits abound with unrefuted statements that none of them had or has a continuing presence in Pennsylvania. *See* Defendants' Motion to Dismiss at 3–4. Therefore, this court will direct its attention to whether specific jurisdiction is applicable, and, if so, whether plaintiff has proffered sufficient evidence to establish a finding of minimum contacts.

Where it is alleged that a tort has occurred out of state and the harm resulting from that tort is alleged to have occurred within the state, the task of determining whether a plaintiff's cause of action arose out of a defendant's forum-related activities is often perplexing. The difficulty of this task is particularly hard, where, as here, the nature of the transaction is commercial in nature yet the claims arising out of the transaction are characterized by the plaintiff as tortious. Simkins argues that its claims fall within the purview of the "tort out/harm in" provision of the Pennsylvania long-arm jurisdiction statute. *See* Pa.Cons.Stat.Ann. § 5322(a)(4) (Purdon's 1981). The Pennsylvania legislature has mandated that tortious activity, even though its only connection with the forum is the in-state harm which gives rise to the cause of action, is sufficiently forum-related to subject a non-resident to personal jurisdiction. This "tort out/harm in" theory of jurisdiction does not fit neatly within the Third Circuit's two-prong constitutional inquiry. Whereas the test set forth in *Schwilm, supra*, focuses on actual contact by the defendant with the forum, section 5322(a)(4) of the long-arm statute provides for jurisdiction by creating either a fictional contact with, or a fictional presence with-

in the forum.[4]  In order to avoid this inherent conflict between the case law and the statute, the courts have focused on the ultimate question of whether the exercise of jurisdiction in such cases comports with the principles of due process.  *See, e.g., Koenig, supra,* 284 Pa.Super. at 558, 426 A.2d at 640.  The state's interest in protecting its citizens against harm resulting from a non-resident's out-of-state activity under section 5322(a)(4) must be weighed against the burden placed on that defendant in forcing him to defend in a foreign jurisdiction.

Assuming arguendo that Simkin's claims against the defendants fall within the scope of tortious activity as defined by section 5322(a)(4),[5] this court must determine whether Simkins has established, by a preponderance of the evidence, that defendants have the requisite minimum contacts with this forum.  In undertaking this task, I am mindful of the Supreme Court's admonition that the essential foundation of in personam jurisdiction is the "relationship among the defendant, the forum, and the litigation."  *Helicopteros Nacionales de Columbia S.A. v. Hall,* — U.S. —, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984) (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)). · The defendants must have "purposefully availed" themselves of the privilege of conducting activities in Pennsylvania.  *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).  Plaintiff, in his briefs and oral argument, has consistently maintained that this court has jurisdiction because it was "reasonably foreseeable" that defendants' tortious conduct would cause harm in Pennsylvania.  Foreseeability alone, however, is not sufficient to confer personal jurisdiction.  *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980).  *Cf. Schwilm, supra,* 661 F.2d at 15 (indicating that in "tort out/harm in" cases, harm must be *clearly and specifically* foreseeable to confer jurisdiction).  Foreseeability is limited to ascertaining whether "the defendant's conduct and connection with the forum state are such that *he should reasonably* anticipate being haled into court there."  *World-Wide Volkswagen, supra,* 444 U.S. at 297, 100 S.Ct. at 567 (emphasis added), *cited in Dollar Savings Bank, supra,* 746 F.2d at 212.  These considerations are necessary to ensure fundamental fairness in the decision to require a defendant to defend in a foreign jurisdiction.  These principles must now be applied to the alleged contacts of each of the defendants.  *See Rush v. Savchuk,* 444 U.S. 320, 332, 100 S.Ct. 571, 579, 62 L.Ed.2d 516 (1980).

### A. *Paramount*

Plaintiff alleges that Paramount is a shareholder of Gourmet.  Further, it asserts that Paramount, through the actions of its shareholder, Gordon Ewart, caused the insolvent Gourmet to satisfy its unsecured indebtedness to Paramount in preference to satisfying its obligations to Simkins.  Simkins argues that Paramount's liability is predicated on a breach of its fiduciary duty owed to creditors of Gourmet under a theory enunciated in *Ceco Corp. v. Bar-Jay Assoc., Inc.,* 68 Pa.D. & C.2d 674,

---

**4.**  The plaintiff in this case has made this distinction even greater by converting what is in essence a single contract claim into a multiple-count tort and contract action.  Plaintiff's efforts seem to be directed at gaining a foothold in the assets of the allegedly insolvent debtor-defendant, Gourmet.  The contact with the forum in this case is even more attenuated than the paradigmatic "tort out/harm in" case involving a defective product shipped into the forum and causing injury to a forum citizen.

**5.**  Since this court concludes that it does not have personal jurisdiction over the movant-defendants on other grounds, it need not address the issue of whether the tort cause of action asserted against defendants Paramount, Greenberg, Ewart and Stern is recognized under Pennsylvania jurisprudence or any other state's substantive law which might be found applicable.  *See Ceco Corp. v. Bar-Jay Assoc., Inc.,* 68 Pa.D. & C.2d 674, 679–81 (Dauphin 1974) (recognizing that corporate officers or directors owe a fiduciary duty to creditors such as Simkins); *Moore v. Industrial Valley Bank & Trust Co.,* slip op. at 2–3 (E.D.Pa. December 16, 1981) (Ditter, J.) (federal court citing *Ceco, supra,* recognizes the existence of such a cause of action in Pennsylvania).

679–81 (Dauphin 1974). Plaintiff relies upon this allegedly tortious conduct to bring the defendant within section 5322(a)(4) of the Pennsylvania long-arm statute.

■ First, Simkins has failed to allege facts sufficient to sustain a tort cause of action in Pennsylvania. There is no evidence that Paramount is either an officer or director of Gourmet; such a fact is a prerequisite to liability under *Ceco.* 68 Pa.D. & C.2d at 679–81. Moreover, there is unrefuted evidence that Paramount lacks sufficient minimum contacts with this forum "such that maintenance of this suit would not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Paramount has not conducted any activities within this state. The alleged loan transaction between Paramount and Gourmet is collateral to the contractual relations between Simkins and Gourmet. Having failed to establish any cause of action against Paramount, this court cannot assert personal jurisdiction over Paramount based on incidental economic detriment. Financial benefits accruing to Paramount from a collateral relation to the forum through Gourmet will not support jurisdiction since there is no constitutionally cognizable contact with Pennsylvania. *See World-Wide Volkswagen, supra,* 444 U.S. at 286, 100 S.Ct. at 559.

### B. *Greenberg*

Plaintiff alleges that various members of the Greenberg entity are shareholders of Gourmet and, also, that Greenberg provided Gourmet with legal representation. Simkins asserts that Greenberg caused the insolvent Gourmet to pay Greenberg for legal services rendered in preference to satisfying its contractual liability to Simkins. The plaintiff again purports to state a tortious cause of action against this defendant under the theory set forth in *Ceco.* Further, Simkins asks this court to find personal jurisdiction over this defendant on the "tort out/harm in" provision of the long-arm statute.

■ Simkins has failed to allege that Greenberg, as a legal entity, is the beneficial owner of stock in Gourmet. Whether individual members of that firm who are alleged to be shareholders of Gourmet may be liable to Simkins is irrelevant since they are not parties to this suit. Furthermore, plaintiff has failed to allege that Greenberg is either an officer or director of Gourmet. Since this is a prerequisite to liability under the theory set forth in *Ceco,* Simkins has failed to allege a tort cause of action cognizable under the provisions of section 5322(a)(4). Notwithstanding the issue of whether the alleged acts of Greenberg fall within the provisions of the long-arm statute, this court would violate due process by asserting jurisdiction over it. The Greenberg partnership has presented unrefuted evidence that it has no contact with the forum apart from that resulting from this lawsuit. *See* Affidavit of Irwin at ¶ 4. Any transaction between Gourmet and Greenberg is collateral to the relationship between Simkins and Gourmet. There is not a cognizable activity within the forum such that Greenberg "should reasonably anticipate being haled into court [in Pennsylvania]." *World-Wide Volkswagen, supra,* 444 U.S. at 297, 100 S.Ct. at 567 (brackets added). Indeed, the Third Circuit has denied specific jurisdiction in a case much more compelling than the case before this court. *See Reliance Steel Prods., supra,* 675 F.2d at 588–89 (delivery of legal advice by a non-resident law partnership over the telephone followed by a bill for such services delivered by mail to the client in Pennsylvania found to be insufficient forum-related activity to confer personal jurisdiction).

### C. *Ewart, Stern and Pechenik*

Ewart, Stern and Pechenik are sued in their individual capacities based on their actions taken as officers or directors of Gourmet. Plaintiff states that both Ewart and Stern, as directors of Gourmet, breached their fiduciary duty to creditors of Gour-

met by causing the allegedly insolvent defendant to advance funds for monies owed them in preference to monies owed creditors such as Simkins. Further, Simkins argues that Pechenik, as an officer of Gourmet, made fraudulent misrepresentations to Morton Simkins over the telephone while Simkins was in Pennsylvania and Pechenik was in New York. *See* Affidavit of Simkins at ¶ 5; Affidavit of Pechenik at ¶ 2.

Assuming that this court would recognize the fiduciary duty imposed on corporate officers or directors in *Ceco*,[6] plaintiff has stated a valid tort cause of action against Stern and Pechenik. *See* 68 Pa.D. & C.2d at 681; *Moore, supra,* slip op. at 2. However, as to defendant Ewart, plaintiff has failed to allege an essential element of the *Ceco* tort. Although Ewart is a member of Gourmet's Board of Directors, there is no commercial loan transaction which took place between Ewart and Gourmet. It is only alleged that Gourmet received a loan from Paramount and repaid these funds to Paramount and not to Ewart. Simkins has not alleged that Ewart is the "alter ego" of Paramount nor has it produced any evidence that they should be considered a single entity for the purposes of this motion. Therefore, although the alleged actions of Stern and Pechenik fall within the scope of the long-arm statute, those of defendant Ewart do not.

I now turn to the ultimate question of whether the exercise of personal jurisdiction is "fundamentally fair" under minimum contacts analysis. In this case, the court must address the special issue which arises when officers or directors of a corporation are sued in their individual capacities for actions taken during the exercise of their corporate duties. The question which arises in this 12(b)(2) motion is not whether the individual corporate officer or director

may be held legally accountable for tortious conduct occurring during the course of his employ but rather whether the individual must himself have sufficient minimum forum contacts to independently satisfy constitutional requirements. *See Donsco, Inc. v. Casper Corp.,* 587 F.2d 602, 606 (3d Cir.1978) (concluding that a corporate officer is individually liable for torts he personally commits and cannot use corporate shield when he is an actual participant in the tort).

Plaintiff has urged the case of *Techno Corp. v. Dahl Assoc., Inc.,* 535 F.Supp. 303 (E.D.Pa.1982) in support of its theory that this court has jurisdiction over the individual defendants. In that case, the court held that, because the individual corporate defendants had conducted business with the plaintiff for five years at the time they committed what was alleged to be an intentional tort,[7] it was *clearly foreseeable* that their actions would have a direct impact on the plaintiff in Pennsylvania. 535 F.Supp. at 309. The *Techno* court, relying on the view that the Supreme Court's decision in *World-Wide Volkswagen, supra,* did not "limit the reach" of section 5322(a)(4) when the place of the harm was clearly and specifically foreseeable, concluded that jurisdiction over the individual corporate officers was proper. *Id.* (*citing Schwilm v. Holbrook, supra,* 661 F.2d at 15).

At least two district courts within this circuit have recently sustained the exercise of in personam jurisdiction over individual defendants based on allegedly tortious actions taken while they were exercising their corporate authority. Unlike *Techno,* however, these cases do not rely on a defendant's ability to foresee in-forum harm resulting from his out-of-state actions to sustain jurisdiction. Rather, they rely on the theory that acts alleged in a complaint

---

**6.** *See* note 6 *supra.*

**7.** In *Techno,* plaintiff produced evidence demonstrating that (1) the individual defendants were directly aware that they were dealing with a Pennsylvania corporation and (2) the defendants and plaintiff were involved in a five-year buyer/seller relationship which involved signifi-

cant forum contact by the individual defendants. 535 F.Supp. at 304, 309, 309 n. 1. However, in the case before me, plaintiff has failed to produce any evidence of a contract between Gourmet and Simkins or of any continuous and substantial relationship between the individual defendants and Simkins. *See* discussion *supra.*

which may be sufficient to create substantive liability on the part of the individual officer or director also inferentially provide a basis for the assertion of personal jurisdiction. *In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 398, 421 n. 34 (E.D.Pa.1981); *Donner v. Tams-Witmark Music Library, Inc.*, 480 F.Supp. 1229, 1234–35 (E.D.Pa.1979). *See also Lighting Systems v. International Merchandising, Assoc., Inc.*, 464 F.Supp. 601, 604 (W.D.Pa. 1979); *Vespe Contracting Co. v. Anvan Corp.*, 433 F.Supp. 1226, 1234–35 (E.D.Pa. 1977). The court in *Donner v. Tams-Witmark Music Library, Inc.*, based its decision on the rule of joint tortfeasor liability adopted by the Third Circuit. 480 F.Supp. at 1233 (*citing, e.g., Donsco, supra,* 587 F.2d at 606). Under this rule, if the corporation is found liable for the tort, the corporate officer who perpetrated the tort will also be subject to personal liability. The court reasoned that it would be anomalous "to permit a corporate officer to shield himself from jurisdiction by means of the corporate entity, when he could not interpose that same shield against substantive liability." 480 F.Supp. at 1234. Therefore, the court reasoned that the corporate officer's allegedly tortious conduct could be considered in determining whether the court had jurisdiction over him as an individual. *Id.*

The defendants have cited two cases which have reasoned contrary to both *Techno* and *Donner. Simpson v. Lifespring, Inc.*, 572 F.Supp. 1251 (E.D.Pa.1983); *PSC Professional Serv. Group, Inc. v. American Digital Systems, Inc.*, 555 F.Supp. 788 (E.D.Pa.1983). *Accord Barsky v. Lifespring, Inc.*, No. 83–6087, slip op. at 3–4 (E.D.Pa. Jan. 15, 1985) (Kelly, J.); *Great American Enterprises v. C & K Management Trust*, No. 83–5518, slip op. at 4–5 (E.D.Pa. Sept. 10, 1984) (Newcomer, J.); *Bucks County Playhouse v. Bradshaw*, 577 F.Supp. 1203, 1210–1211 (E.D.Pa.1983); *Stop-A-Flat Corp. v. Electra Start of Michigan, Inc.*, 507 F.Supp. 647, 651 (E.D. Pa.1981). *See also Spelling-Goldberg Productions v. Bodek & Rhoads*, 452 F.Supp. 452, 454 (E.D.Pa.1978); *Brown v. Cosby*, 433 F.Supp. 1331, 1344 (E.D.Pa.1977); *Feld v. Tele-view, Inc.*, 422 F.Supp. 1100, 1104 (E.D.Pa.1976); *Miller v. American Telephone & Telegraph*, 394 F.Supp. 58, 64 (E.D.Pa.1975), *aff'd*, 530 F.2d 964 (3d Cir. 1976) (decided under the old Pennsylvania long-arm statute, 42 P.S. §§ 8302, 8304, 8305, 8307 and 8309). First, in *PSC v. American Digital Systems*, the court reiterated the Supreme Court's admonition that the focus of the minimum contacts inquiry is not on foreseeability, but rather, on whether the defendant's conduct is such that he should reasonably be haled into a forum court. 555 F.Supp. at 793 (citing *World-Wide Volkswagen, supra,* 444 U.S. at 295, 297, 100 S.Ct. at 567). The *PSC* court implicitly rejected the foreseeability standard applied by the *Techno* court. Instead, the court focused on the negative effect of subjecting corporate officers to personal jurisdiction based solely on their participation in corporate activity. Chief Judge Luongo stated

> Were the law otherwise, officers of corporations operating in several states would be faced with a Hobson's choice. They must either disassociate themselves from the corporation or defend the propriety of their conduct in a distant forum.

555 F.Supp. at 793. Based on these policy grounds, the court concluded that a plaintiff must demonstrate other meaningful contacts with the forum apart from the contacts of the corporate entity of which the defendant is an officer or director. *Id.* at 794. Although it was clearly foreseeable that the corporate officers might be charged with acting unreasonably and hence, found responsible for the harm caused thereby, the court found that the plaintiff had not established sufficient independent minimum contacts to sustain in personam jurisdiction. *Id.* at 793.

In *Simpson v. Lifespring, supra,* the court similarly expressed its displeasure with reasoning of both *Donner* and *Techno.* It also concluded that to allow personal jurisdiction based on an officer or director's corporate activities would in effect

render corporate officers or directors subject to suit in any state in which their corporation does business and would violate the concept of fundamental fairness which undergirds constitutional due process. 572 F.Supp. at 1253.

Because I find that both the reasoning and the result of *PSC* and *Simpson* best comport with the principles of due process as enunciated by the Supreme Court and the Third Circuit in recent personal jurisdiction cases, I embrace their position that a corporate officer or director's actions taken in his corporate capacity are, by themselves, insufficient to bring him personally within the jurisdiction of this court. I conclude that the *Techno* court relied too heavily on the traditional foreseeability analysis which is now reserved almost exclusively for products liability or so-called "stream of commerce" cases. *See, e.g., PSC, supra,* 555 F.Supp. at 794; *Sunn Classic Pictures, Inc. v. Budco, Inc.,* 481 F.Supp. 382, 385 (E.D.Pa. 1979). While the *Techno* court purports to rely on Third Circuit precedent for the proposition that *World-Wide Volkswagen* does not restrict the scope of section 5322(a)(4), I note that the principle articulated in *Schwilm* is dictum and need not be followed by this court. *Schwilm, supra,* 661 F.2d at 15 (citing only products liability cases). *See Dollar Savings Bank, supra,* 746 F.2d at 212 (concluding that, for purposes of minimum contacts analysis, foreseeability is conduct and connection with the forum such that it is reasonable for the non-resident to expect to be haled into court there). Although this court finds it "clearly foreseeable" that a corporate officer could be held liable for harm resulting from tortious conduct, it is not "reasonable" for that same individual to anticipate that he will be haled into any court in every forum in which the corporation transacts business.

Furthermore, I do not accept the *Donner* court's conclusion that a court can infer personal jurisdiction from the substantive allegations contained in a complaint. *See* 480 F.Supp. at 1234. While the rule of joint tortfeasor liability may make it economically advantageous to allow the maintenance of suit against both a corporation and its officers or directors in one court, the policy of judicial economy cannot be addressed in a vacuum. The principles of due process mandate that a court focus on the hardship of forcing a non-resident defendant to litigate in a distant forum. Nor may the court rule on the sufficiency of the cause of action as it would in a motion under Fed.R.Civ.P. 12(b)(6); rather, it must determine whether the plaintiff has established minimum contacts by a preponderance of the evidence under Rule 12(b)(2). *See Time Share, supra,* 735 F.2d at 66–67 n. 9. Therefore, I hold that a plaintiff seeking to establish personal jurisdiction over an individual corporate officer or director on the basis of tortious conduct committed in the exercise of his corporate duties must prove, by a preponderance of the evidence, that the non-resident officer or director independently has sufficient forum-related contacts.

Applying this principle to the facts of this case, I find that Simkins has failed to sustain its burden of proof. Plaintiff has failed to allege that defendants Ewart, Stern and Pechenik committed any tort in their *individual* capacity. *See* Complaint at ¶¶ 18–31, 41–49. *See also Stop-A-Flat, supra,* 507 F.Supp. at 651. He has failed to allege that the individual defendants are the "alter egos" of the corporations which they represent. *See, e.g., Great American Enterprises, supra,* slip op. at 4. Moreover, plaintiff does not even argue that these defendants performed any activity in the forum or performed any activity directly related to the forum.

On the other hand, Ewart has presented an unrefuted affidavit that he has had no contact with the forum in either his individual or his corporate capacity. Even Paramount, the corporation in which he is a shareholder, has no connection with this forum. *See* Affidavit of Ewart at ¶¶ 2, 3, 5 & 6. *See also Time Share, supra,* 735 F.2d at 66 n. 9 (indicating that, if insufficient minimum contacts on part of corpora-

tion, no jurisdiction over individual sued personally for actions taken as a corporate officer). As to Stern, there is also unrefuted evidence that he has had no contact with the forum in either his individual capacity or his corporate capacity with Gourmet. *See* Affidavit of Stern at ¶¶ 2, 3, 4, & 5. Simkins *has* established that Pechenik has had contacts with Pennsylvania in his corporate capacity. *See* Affidavit of Pechenik at ¶¶ 4, 5; Affidavit of Simkins at ¶ 2.[8] However, plaintiff has not demonstrated any contact between the forum and Pechenik while he was acting in his individual capacity. It would be fundamentally unfair to assert personal jurisdiction over him on this basis alone.

While this court retains jurisdiction over Gourmet, I find that none of the movant-defendants could reasonably anticipate being haled into court in Pennsylvania. Accordingly, I find that this court may not constitutionally exercise in personam jurisdiction over Paramount, Greenberg, Ewart, Stern and Pechenik. Therefore, the defendants' motion is granted.

---

8. Even if I were to consider the actions of Pechenik in his corporate capacity, the mere placing of phone calls into the forum state has not generally been held sufficient to constitute "purposeful availment." *See, e.g., Compagnie des Bauxites, supra,* 651 F.2d at 889; *Bucks County Playhouse, supra,* 577 F.Supp. at 1209.