**BUCKS COUNTY PLAYHOUSE, Ram III, Ralph A. Miller, III, and Raymond Daikeler**

v.

**Terry BRADSHAW, Gilbert R. Shanley, Jr., Dan Wright, and Ann Wright, Reps. Agency.**

**No. 83–2726.**

United States District Court, E.D. Pennsylvania.

Oct. 28, 1983.

Clyde W. Waite, Bristol, Pa., for all plaintiffs.

Antoinette R. Stone, Philadelphia, Pa., for defendants Terry Bradshaw and Gilbert R. Shanley, Jr.

Neal Schwarzfeld, New York City, for Dan Wright and Ann Wright, Reps. Agency.

## MEMORANDUM AND ORDER

KELLY, District Judge.

This is a diversity action in which plaintiffs seek to recover compensatory and punitive damages for an alleged breach of an oral contract for personal services. Each defendant has moved to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b). For the reasons which follow, the complaint will be dismissed against all four defendants.

*The Parties*

The principal plaintiff in this case is Bucks County Playhouse, (the "Playhouse") a partnership doing business in New Hope, Pennsylvania. Plaintiffs Ralph A. Miller, III and Raymond Daikeler are partners in Bucks County Playhouse. RAM III is a Pennsylvania corporation of which Ralph Miller is the principal shareholder.

Defendants include Terry Bradshaw, a citizen of Louisiana; Gilbert R. Shanley, Jr., a citizen of Louisiana and an accountant, who acts as a business agent of Terry Bradshaw; Ann Wright Representatives, Inc. (the "Agency"), a New York Corporation whose primary function is to secure work for actors; and, Dan Wright, a Vice President and employee of the Agency.

*The Facts*

The plaintiffs in this case allege that in early November of 1982, representatives of the Playhouse telephoned the Agency in New York to discuss the names of major show business personalities who might wish to appear at the Playhouse during the 1983 season. A list of shows and dates were discussed. The Agency suggested that Terry Bradshaw be considered for one of the shows. The Playhouse responded favorably to this proposal due to Bradshaw's fame and high visibility in the Commonwealth as the quarterback for the Pittsburgh Steelers and his "all around status as a Pennsylvania hero." Miller Aff. at 1. After agreement that Bradshaw would fit the lead character of Joe Hardy in the musical production of "Damn Yankees", Florence Rothaker, a representative of the Agency and the initial contact at the Agency, referred Ralph Miller to Dan Wright because he "had the authority to make deals for Bradshaw." Miller Aff. at 2. Dan Wright requested information from Miller via the phone on matters including

the size of the theater, its location and the musical character Bradshaw would play.

Thereupon, negotiations were commenced. Miller's initial offer included the following terms:

a) Rehearsal week compensation— $400.00;

b) Performance week compensation— $1,500.00 plus 15% of the gross over $20,000.00 (net taxes);

c) Eight shows per week performance schedule;

d) Transportation and a Holiday Inn style room to be supplied.

Dan Wright called Miller's office later with a counter offer requiring Bradshaw's performance week compensation to be computed on 15% of the total gross. In a subsequent phone call from Dan Wright to Miller, Wright relayed additional terms, i.e., that a script was to be sent immediately and that Miller, as director of "Damn Yankees", would travel to Louisiana to Bradshaw's ranch to rehearse him prior to his arrival at the Playhouse. Miller accepted the additional terms.

Miller then explained to Dan Wright that the printing deadline for the season's brochure was 5:00 p.m. the following day. Miller requested that biographic material and a suitable picture of Bradshaw be sent the quickest means possible in order to include the material in a 60,000 piece brochure mailing. Dan Wright assured Miller that the material would be forwarded and received prior to the deadline. The next day, the Playhouse received a picture and biography of Terry Bradshaw by Federal Express Mail. Sixty thousand brochures, featuring Bradshaw as the star of the season and the opening performer of the 1983 season, were printed of which 40,000 were mailed to the plaintiffs' clientele.

On November 17, 1982, Ralph Miller wrote a letter to Dan Wright reciting the terms of the proposed agreement. The letter requested Wright to have Bradshaw, or his agent, execute one copy of the letter and return it to Miller.

Miller was subsequently advised that Terry Bradshaw had decided not to appear at the Playhouse for personal reasons. As a result, a substitution for Bradshaw had to be obtained, the opening of the theater season was delayed, and plaintiffs were required to print and mail new brochures. The instant action was thereafter commenced.

*Discussion of the Law*

■ Preliminarily, the Court notes that in disposing of a motion to dismiss for lack of personal jurisdiction the allegations complained of must be taken as true. *In Re Arthur Treachers Franchise Litigation,* 92 F.R.D. 398, 409 (E.D.Pa.1981). Indeed, "the plaintiff is entitled to every favorable inference which can be drawn from the pleadings, affidavits and exhibits." *Id.* at 410. Nevertheless, the burden of proof remains with the plaintiff, to demonstrate by competent proof, a jurisdictional predicate where an objection is interposed. *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936).

■ To determine if personal jurisdiction exists, the Court must look to the law of the state in which it sits. *Arrowsmith v. United Press International,* 320 F.2d 219, 223 (2d Cir.1963); *Partin v. Michaels Art Bronze Co.,* 202 F.2d 541, 542 (3rd Cir. 1953). *See also* Fed.R.Civ.P. 4(d)(7) and 4(e). In Pennsylvania, personal jurisdiction over the defendants must be based upon 42 Pa.C.S.A. § 5301 (general jurisdiction over persons) or 42 Pa.C.S.A. § 5322 (long-arm jurisdiction). The applicability of these statutes to the corporate and individually named defendants will hereafter be considered.

A. The Corporate Defendant—Ann Wright Agency, Inc.

1. General Jurisdiction

42 Pa.C.S.A. § 5301 provides in pertinent part:

(a) *General Rule.* The existence of any of the following relationships between a person and this Commonwealth

shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person...

(2) *Corporations.*

(i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.

(ii) Consent, to the extent authorized by the consent.

(iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

It is uncontroverted that the Agency is a New York corporation not licensed as a foreign corporation under the laws of Pennsylvania. Neither has the agency consented to suit in this Commonwealth. Therefore, the only applicable provision by which this Court could exercise general jurisdiction over a foreign corporation is subsection (iii), commonly referred to as the "doing business" provision.

Subsection (iii) provides that by virtue of maintaining "a continuous and systematic part of its general business" within this Commonwealth, a corporate defendant may be deemed "present" in the forum, in the traditional sense, and thus, amenable to suit on causes of action arising from forum related or non-forum related activities. *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ("... the terms 'present' or 'presence' are used merely to symbolize those activities of the corporation's agent within the state which the courts will deem to be sufficient to satisfy the demands of due process ...."). *Id.* at 316–17, 66 S.Ct. at 158.

■ In order to have been carrying on a continuous and systematic part of its general business in the state, the defendant must have "purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Generally, this type of jurisdictional basis is found where a non-resident defendant makes a substantial number of visits to the forum state, solicits business regularly, or advertises in a way specifically directed to the forum market. *Strick Corp. v. A.J.F. Warehouse Distributors, Inc.*, 532 F.Supp. 951, 956 (E.D.Pa.1982).

■ According to the Agency's unrebutted affidavit, the Agency does not maintain an office or bank account within Pennsylvania; does not conduct or even seek to conduct business in Pennsylvania; and has not physically entered the state in connection with the instant or any other business transaction. The only contacts supporting jurisdiction over the defendant are approximately three telephone calls, the mailing of a picture and a contract, and one telegraphic communication [1] by the defendant.

Under the facts presented in this case, this Court has no difficulty finding that defendant's activities in the forum state fall substantially below the threshold required for the exercise of general jurisdiction over a corporate defendant under § 5301(a)(2)(iii).

2. Long-Arm Jurisdiction

The second jurisdictional provision—Section 5322 may be summarized as follows: Subsection (a) provides that a tribunal of this Commonwealth may exercise jurisdiction over a person who performs any one of ten enumerated acts. 42 Pa.C.S.A. 5322(a)(1–10).[2] Subsection (b) provides that

---

**1.** The telegraphic communication is mentioned in Defendant's Memorandum in Support of Motion to Dismiss at 8.

**2.** Plaintiffs Memorandum in Opposition to Defendant's Motion to Dismiss specifically directs this Court's attention to subsection (a)(1–4).

(a) General Rule. A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... who acts directly or by agent, as to a cause of action or other matter arising from such person:

(1) Transacting any business in this Commonwealth without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph: ...

(2) Contracting to supply services or things in this Commonwealth.

"... the jurisdiction of the tribunals of this Commonwealth shall extend to all persons ... to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S.A. § 5322(b). Taken together, these two sections bring within the purview of a court's jurisdiction any defendant whose contacts with the state are sufficient to satisfy the requirements of due process. The only statutory limitation on this broad grant of jurisdiction is contained in subsection (c) which provides that only causes of action arising from the forum contacts may be asserted against a defendant. 42 Pa.C. S.A. § 5322(c).

In essence, an inquiry into the personal jurisdiction of a court under the long-arm statute raises but two questions:

1) What are the contacts of the defendant with the forum state which give rise to the cause of action complained of

and

2) Are these contacts constitutionally sufficient under the due process clause.

The contacts of the Agency with this forum have been detailed, therefore it only remains to determine whether they are sufficient to sustain personal jurisdiction under the due process clause of the Fourteenth Amendment.

The concept of minimum contacts serves two purposes. It protects the defendant against the burdens of litigation in a distant or inconvenient forum, and, more importantly, it ensures that the states, through their courts, do not reach out beyond the limits imposed on them by the

Constitution. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Under minimum contact analysis, the Supreme Court has made clear certain factors which must be considered: (1) has the defendant purposefully availed itself of the privilege of conducting activities within the forum state; *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239; (2) did the cause of action arise from the defendant's activities within the state; *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957); and (3) were the acts of the defendant in the forum state substantial enough to make the exercise of jurisdiction over it reasonable? *International Shoe Co. v. Washington*, 326 U.S. at 317, 66 S.Ct. at 158. *See also, Bev-Mark, Inc. v. Summerfield GMC Truck Co.*, 268 Pa.Super. 74, 78–79, 407 A.2d 443, 445 (1979); *Proctor & Schwartz, Inc. v. Cleveland Lumber Co.*, 228 Pa.Super. 12, 19, 323 A.2d 11, 15 (1974). Consideration of these factors is designed to test whether the "defendant's conduct and connection with the forum state [was] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 297, 100 S.Ct. at 567.

■ In order to ascertain whether the defendant has purposefully availed itself of the privilege of conducting activities within the forum state, plaintiffs urge this Court to consider the factors[3] suggested by Judge Pollak in *Strick Corp. v. A.J.F. Warehouse Distrib., Inc.*, 532 F.Supp. 951, a case involving the question of personal jurisdiction over a non-resident purchaser of goods. Inasmuch as the Agency was not a party to the oral contract for personal

---

(3) Causing harm or tortious injury by an act or omission in this Commonwealth.

(4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

For the purposes of this motion, the Court assumes that the defendants have performed one or more of the acts specified in subsection (a)(1–4).

**3.** The factors considered in *Strick* include: (1) the character of the pre-contract negotiations; (2) the location of those negotiations; (3) the terms of the sales agreement; and (4) the type of goods sold.

services herein alleged,[4] the very thoughtful analysis suggested by Judge Pollak cannot be superimposed upon the facts of the instant case in their totality. However, the first two factors highlighted by Judge Pollak do appear to be applicable here, focusing as they do on the negotiation phase of the contract formation process, in which the defendant was involved.

Relative to the first factor, the character of the pre-contract negotiations, the Court in *Strick* suggested that "courts should look at whether the non-resident defendant initiated the deal, attempted to alter the terms of the contract, or conducted significant negotiations with the plaintiff." *Id.*

As is clear from the foregoing recitation of the facts, it was the plaintiff who initiated the contact with the defendant Agency. While give and take negotiations between the various parties did occur, it is apparent that the Agency was merely a conduit through which the negotiations flowed. The Agency's role in the negotiations was essentially passive, other than for its initial suggestion that Bradshaw be considered.

Elaborating upon the second factor, the Court in *Strick* stated that,

the place of negotiations must be taken into consideration since the fact that the buyer negotiates the contract while visiting the forum state or makes a *substantial* number of telephone calls or mailings into the forum during the negotiation stage is also relevant to assessing whether the buyer has purposefully availed itself of the opportunity of conducting activities in the forum.

*Id.*, (citations omitted) (emphasis added).

Plaintiffs do not contend that anyone visited Pennsylvania in connection with the contract negotiation process. Rather, as previously noted, the only contacts relied upon are a series of telephone calls, the

mailing of the picture and biographic material, and one telegraph. On a relative scale of degree, it cannot be said that defendant's activities rose to the level of "substantial".

It is well established that a "defendant's fleeting or fortuitous forum connection lacks the requisite element of intentional invocation of the forum's benefits sufficient to satisfy the requirements of *Hanson v. Denckla* and its progeny." *Compagnie Des Bauxites De Guinea v. Ins. Co. of N.Am.*, 651 F.2d 877, 889 (3rd Cir.1981) (Gibbons, J., concurring in part and dissenting in part). Generally, the mere placing of phone calls by defendant into the forum state does not constitute "purposeful availing." *North Eastern Timber, Inc. v. Pines Trailer Corp.*, 501 F.Supp. 321 (E.D.Pa.1980) (defendant's phone calls to Pennsylvania from Illinois do not constitute purposeful activity in Pennsylvania). *See e.g., Covington Industries, Inc. v. Resintex, Inc.*, 629 F.2d 730 (2d Cir.1980); *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247 (9th Cir.1980); *Aaron Ferer & Sons Co. v. Diversified Metals Corp.*, 564 F.2d 1211 (8th Cir.1977).

The response to the third inquiry articulated by the Court in *International Shoe* flows naturally from the preceding discussion. If the defendants have not purposefully availed themselves of the privilege of acting in the forum state, then it clearly cannot be said that the acts of the defendant were sufficiently substantial so as to make the exercise of jurisdiction in the forum state reasonable. *International Shoe v. State of Washington*, 326 U.S. at 320, 66 S.Ct. at 160. Examination of the acts of the defendant, under the applicable standards, discloses that plaintiffs have failed to allege sufficient contacts with this

---

*Strick Corp. v. A.J.F. Warehouse Distrib., Inc.,* 532 F.Supp. at 958.

**4.** Even accepting plaintiffs' claim that the Agency had authority to enter into contracts on behalf of Bradshaw, it is by now hornbook law that an agent is not liable for a breach of contract by a disclosed principle unless the agent

agrees with the third party to be liable. *Vernon D. Cox & Co., Inc. v. Gibbs,* 267 Pa.Super. 411, 415, 406 A.2d 1107, 1110 (1979); *Revere Press, Inc. v. Blumberg,* 431 Pa. 370, 373, 246 A.2d 407, 409 (1968); Restatement (Second) of Agency § 320 (1958).

forum to withstand the minimum contacts analysis. Thus, personal jurisdiction over the corporate defendant, Ann Wright Agency, Inc. cannot be asserted.

### B. The Individual Defendants

#### 1. Dan Wright

■ 42 Pa.C.S.A. § 5301(a)(1) provides that jurisdiction over individuals is present where (1) the individual is served while in the Commonwealth; or (2) the individual is a domiciliary in the Commonwealth at the time of the commencement of the action; or (3) where the individual has executed a consent to be sued in Pennsylvania. The affidavit of Dan Wright indicates that he was served by mail in New York, that he is not a domiciliary of the Commonwealth, and that he has not executed a consent to be sued in Pennsylvania. Those factors not being present herein, jurisdiction over Dan Wright as an individual is not present pursuant to 42 Pa.C.S.A. § 5301(a)(1).

Turning then to Pennsylvania's long arm statute, 42 Pa.C.S.A. § 5308, it is equally clear that under minimum contact analysis jurisdiction is similarly lacking; particularly where, as here, Wright was acting on behalf of his employer, the Agency. In *Techno v. Dahl Associates, Inc.*, 521 F.Supp. 1036 (W.D.Pa.1981), the Court noted that individuals performing acts in a state in their corporate capacity do not subject themselves to the personal jurisdiction of that state.

> Establishing personal jurisdiction over an individual on the basis of 'doing business' requires that the evidence show not only that the individual did business within Pennsylvania as defined in 40 Pa.C.S.A. 8309 [now 5322] but that the business was done by the individual *for himself and not for or on behalf of the corporation.*

*Id.* at 1037 (quoting *Spelling-Goldberg Productions v. Bodek and Rhodes*, 452 F.Supp. 452, 454 (E.D.Pa.1978)). *See also, Stop-a-Flat Corp. v. Electra Start of Michigan, Inc.*, 507 F.Supp. 647 (E.D.Pa. 1981).

In the instant matter, there is no allegation in the complaint that Wright was acting in a manner other than in his corporate capacity as a Vice-President and employee of the Agency, or that he personally stood to gain from the transaction.

Since all of Dan Wright's activities in this matter were in a corporate, and not personal capacity, by definition, the factors set forth by the Supreme Court are not present herein—the defendant has not conducted business in the state, the cause of action did not arise from activities within the state, and in fact, there were no acts by defendant Wright, in his individual capacity, in Pennsylvania whatsoever.

#### 2. Gilbert R. Shanley, Jr.

■ All that has been said as to jurisdiction under § 5301 relative to defendant Dan Wright applies equally to defendant Gilbert R. Shanley, Jr. Plaintiffs have not alleged, much less supported by competent proof, any of the § 5301 bases of general jurisdiction over an individual defendant, i.e., 1) presence in the state at the time process was served; 2) domicile or 3) consent. Thus, jurisdiction cannot be asserted under 42 Pa.C.S.A. § 5301.

Likewise jurisdiction may not be had under § 5322. The contacts between this forum and defendant Shanley which consists of a few telephone calls does not satisfy the minimum contacts requirement of the due process clause as previously discussed. *See supra* at 1209–1210.

#### 3. Terry Bradshaw

■ Defendant Bradshaw asserts two grounds in support of his motion to dismiss the complaint. First, Bradshaw avers that the Court lacks personal jurisdiction and secondly, that service of process is insufficient.

While the first point presents the interesting question of whether Bradshaw's activities in the state as a football player of great renown constituted the contacts out of which the contract claim arose, the

Court finds that it need not resolve that issue in the instant motion.[5]

The second ground for dismissal advanced by defendant Bradshaw suffices for resolution of this motion. Plaintiffs attempted to serve Bradshaw via registered mail. Rule 4(e) of the Fed.R.Civ.P. permits service of a summons and complaint upon a person outside the forum state in the manner prescribed by state statute or rule. Pennsylvania law permits service of process outside the Commonwealth,

(1) By personal delivery in the manner prescribed for service within this Commonwealth;

(2) In the manner provided or prescribed by law of the place in which the service is made for service in that place in action in any of its courts of general jurisdiction;

(3) By any form of mail addressed to the person to be served and requiring a signed receipt.

42 Pa.C.S.A. § 5323(a)(1)–(3). § 5323(b) requires that "[w]hen service is made by mail, proof of service shall include a receipt signed by the addressee or other evidence of personal delivery to the addressee satisfactory to the tribunal." 42 Pa.C.S.A. § 5323(b). Under Louisiana law service must be made either by tendering process to the defendant or leaving it at his domicile. LSA–C.C.P. art. 1293. None of the methods of service available have been employed here.

In his declaration filed in support of his motion to dismiss, defendant Bradshaw states that he has not been served with a copy of the summons and complaint in this action either by personal service or by mail. (Bradshaw Aff. at 2.) Exhibit A. attached to Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss indicates that the summons and complaint were sent to the following address:

Mr. Terry Bradshaw
c/o Gilbert R. Shanley, Jr., Esquire
Heard McElroy & Vestal
720 Travis Street
P.O. Box 1607
Shreveport, Louisiana 71165

The return receipt, dated June 1, 1983, is signed by V. Rushing. Plaintiffs urge this Court to find that service of process has been completed. This we cannot do. Until plaintiffs can conform to the statutory requirements, there is no predicate for the Court to exercise jurisdiction over the defendant Bradshaw.

When service of process is not made according to the procedures described by statute, dismissal of the complaint is appropriate. *Richardson v. Ingram Corp.*, 374 F.2d 502, 503 (3rd Cir.1967), *cert. denied*, 389 U.S. 866, 88 S.Ct. 134, 19 L.Ed.2d 139 (1967); *Tri-County State Bank v. Hertz*, 418 F.Supp. 332, 344 (M.D. Pa.1976). Moreover, a defendant does not waive his objection to insufficiency of service of process by appearing and defending on that basis. *Peterson v. Dickison*, 334 F.Supp. at 551, 554 (W.D.Pa.1971).

For the foregoing reasons, the Defendants' Motions to Dismiss will be granted. An appropriate Order follows.

## ORDER

AND NOW, on this 28th day of October, 1983, upon consideration of the foregoing Memorandum, it is hereby ORDERED and DECREED that:

1. The Motion of Defendant Terry Bradshaw to Dismiss the Complaint for Insufficiency of Process is GRANTED.

2. The Motions of Defendant Gilbert R. Shanley, Jr., Dan Wright, and Ann Wright Representatives, Inc. to Dismiss the Complaint for Lack of Personal Jurisdiction are GRANTED.

**5.** Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss appears to advance the theory that defendant Bradshaw may be subject to jurisdiction under § 5301(a)(2)(iii), the "doing business" provision of the general jurisdiction provision. As is apparent from a cursory reading of the statute, this provision does not apply to individuals sued in their individual capacity. *See* 42 Pa.C.S.A. § 5301(a)(1).