Mary FIELDS, Individually and as Administratrix of the Estate of Allegra Mack,

v.

RAMADA INN, INC., et al.

Civ. A. No. 92–4580.

United States District Court, E.D. Pennsylvania.

March 4, 1993.

Herbert Monheit, Frank A. Rothermel, Law Offices of Herbert Monheit, Philadelphia, PA, for plaintiff.

Phillip B. Silverman, Harris & Silverman, Philadelphia, PA, for defendants.

## MEMORANDUM AND ORDER

BRODY, District Judge.

The primary issue presented by defendants' motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(2) is twofold: whether the evidence presented by plaintiff, Mary Fields ("Fields"); including brochures published by Ramada Inn, Inc. ("Ramada"), an "800" telephone reservation number and a worldwide directory, (1) adequately shows that non-resident defendants R. Wayne Lowe ("Lowe") d/b/a Lumberton Hotel Associates, Bartlett Johnson ("Johnson") and Summit Hotel Management Company ("Summit") systematically and continuously conduct business in Pennsylvania; or whether (2) Fields' cause of action arose from the defendants' minimum contacts with the forum state, Pennsylvania. Currently pending before me is the defendants, Ramada Inn, Inc. ("Ramada"), Summit, Lumberton Hotel Associates, Lowe and Johnson's motion to dismiss plaintiff's complaint against defendants, Lowe, Summit and Johnson [1] pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. At an evidentiary hearing held on February 16, 1993, counsel for the parties agreed that Ramada is not contesting this court's assertion of jurisdiction and that the action against Lumberton Hotel Associates is stayed because of bankruptcy proceedings currently ongoing in Georgia. (Evidentiary Hearing Transcript p. 4–5).

### PARTIES

The plaintiff, Mary Fields, is a resident of Philadelphia, Pennsylvania and the duly ap-

---

**1.** According to plaintiff's complaint and response to defendants' motion to dismiss, Summit is a Florida corporation with its principal place of business in Boca Raton, Florida. Lowe is the sole general partner in Lumberton Hotel Associates d/b/a Ramada Inn of Lumberton which has its principal place of business in Warner Robbins, Georgia. Johnson currently lives in Florida and was the general manager of the Ramada Inn of Lumberton at the time this cause of action arose.

pointed Administratrix of her deceased daughter, Allegra Mack's estate.

Summit is a Florida corporation with its principal place of business in Indialantic, Florida. (Plaintiff's Complaint para. 6). Summit's business is the management of the Ramada Inn of Lumberton, North Carolina. Summit does not own or operate any hotels or other property in Pennsylvania. (Affidavit of Leon Volker, President of Summit).

Lowe is the sole general partner of Lumberton Hotel Association, a North Carolina limited partnership that owns and operates the Ramada Inn of Lumberton, North Carolina. (Plaintiff's Complaint para. 10–11; Affidavit of R. Wayne Lowe).

Johnson was the general manager of the Ramada Inn of Lumberton, North Carolina at the time this cause of action arose. (Plaintiff's Complaint para. 12). At present, Johnson is a resident of Florida. (Affidavit of Bartlett Johnson).

## INTRODUCTION

This is a wrongful death action based upon diversity jurisdiction. Plaintiff brings this action on her own behalf and on behalf of her deceased daughter, Allegra Mack's, estate. According to plaintiff's complaint and response to the motion to dismiss, in August 1990 Allegra Mack was on a bus trip from Philadelphia to Walt Disney World in Florida with her mother and other members of a church group. On the way to Florida, the church group stopped for a night at the Ramada Inn of Lumberton, North Carolina. Lamb's Travel Center, a Philadelphia travel agency, made these accommodation arrangements and confirmed the church group's reservation by letter.

After arriving at the hotel, Allegra and some of the other church group members went to the hotel pool. Allegra apparently drowned in the pool and although she received medical attention died six days later.

At the evidentiary hearing on February 16, 1993, plaintiff presented the following evidence to support her claim that this court's exercise of personal jurisdiction over Lowe, Summit and Johnson is proper: (a) a brochure page which lists an "800" telephone

number for Ramada and includes a photograph of the Ramada Inn of Lumberton and a map to the Ramada Inn of Lumberton; (b) Johnson's business card as the general manager of the Ramada Inn of Lumberton; (c) the cover sheet of the Ramada worldwide directory which includes a listing for the Ramada Inn of Lumberton; (d) the Ramada license agreement between Ramada and L. H. Inc. and signed by Lowe as president of L.H. Inc.; (e) the 1988 Ramada quality assurance program listing standards of service and rules of operation; (f) the Ramada quality assurance program setting forth construction and refurbishing standards; (g) Ramada license application; (h) the Bentwood Joint Venture agreement; (i) the Lumberton agreement between Bentwood and Lumberton Hotel Associates; and (j) the articles of incorporation for Driftwood Management Co., Inc. with an amendment which changes its name to Summit Hotel Management Co.

## DISCUSSION

■ Fields bears the burden of proving that defendants' contacts with this jurisdiction satisfy due process for the purpose of my exercise of personal jurisdiction over them. *Wright v. American Standard, Inc.*, 637 F.Supp. 241 (E.D.Pa.1985); *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984).

Rule 4(e) of the Federal Rules of Civil Procedure allows this court to exercise personal jurisdiction over non-resident defendants, like Summit, Lowe and Johnson, to the extent permissible under the laws of the forum state, Pennsylvania. *Mellon Bank (East) PSFS, N.A. v. Farino*, 960 F.2d 1217, 1221 (3d Cir.1992). Because Summit is a corporation and Lowe and Johnson are individuals, several Pennsylvania statutes are applicable here. First, 42 Pa.Cons.Stat.Ann. § 5322(b), sets forth the overarching jurisdictional standard as it allows this court to exercise jurisdiction over nonresidents "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." This means that this court's exercise of personal jurisdiction over

these nonresident defendants is proper so long as there is no violation of due process. *Mellon Bank,* 960 F.2d at 1221. Second, within the confines of due process, 42 Pa. Cons.Stat.Ann. § 5301(a)(2)(iii) provides that this court may exercise general personal jurisdiction over a corporation when it carries on a "continuous and systematic part of its general business within this Commonwealth." Third, and also within the parameters of due process, 42 Pa.Cons.Stat.Ann. § 5301(a)(1) provides that this court may exercise jurisdiction over individuals if they are present in Pennsylvania when process is served, if they are domiciled in Pennsylvania when process is served or if they consent to jurisdiction. Finally, 42 Pa.Cons.Stat.Ann. § 5308 provides that this court may exercise jurisdiction "only where the contact with this Commonwealth is sufficient under the Constitution of the United States."

■ In the context of due process, Pennsylvania's long arm statute contemplates that this court may exercise personal jurisdiction over non-residents in two circumstances: (1) when general jurisdiction exists because the defendant is generally present in the state, has consented to suit here or systematically and continuously conducts business in the state; or (2) when specific jurisdiction exists because the cause of action arose from the defendants' minimum contacts with the state. *Jaffe v. Julien,* 754 F.Supp. 49, 52 (E.D.Pa. 1991). In order to work through this dual approach to personal jurisdiction, I must determine whether the cause of action arose from defendants' activities which are related to Pennsylvania or from defendants' activities which are unrelated to this forum. *Gehling v. St. George's School of Medicine,* 773 F.2d 539, 541 (3d Cir.1985).

### 1. Summit—the corporate defendant and general jurisdiction

The first issue is whether Summit's contacts with Pennsylvania justify this court's exercise of general personal jurisdiction. *Mellon Bank,* 960 F.2d at 1221. If general personal jurisdiction exists then Summit may have to answer any claim brought against it

in this jurisdiction even though the subject matter of the cause of action is unrelated to this forum.

Plaintiff maintains that Summit systematically and continuously conducts business in Pennsylvania and therefore that general personal jurisdiction is proper. Plaintiff also maintains that Summit is an agent of Ramada and therefore may be sued in this court because jurisdiction over Ramada is proper here. For the reasons set forth below, I disagree with plaintiff's assertions. I find that I have no general personal jurisdiction over Summit because it does not and has not systematically and continuously conducted business in Pennsylvania.

■ A nonresident defendant's forum activities are systematic and continuous if they are extensive and pervasive. *Johnson v. Summa Corp.,* 1985 WL 2967 at 3 (E.D.Pa. 1985). In order to systematically and continuously conduct business in Pennsylvania, a corporation must purposefully avail itself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Bucks County,* 577 F.Supp. 1203, 1207 (E.D.Pa.1983); quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

■ Plaintiff suggests that Summit availed itself of the privilege of acting in Pennsylvania because the Ramada Inn of Lumberton: (1) was listed in the worldwide directory; (2) could be reached via a nationwide "800" toll-free telephone number; (3) participated in and paid moneys into Ramada's national advertising fund; and (4) because the plaintiff's hotel reservation was made through a travel agency in Philadelphia.

In a similar case, this court found that these types of contacts were not sufficient to justify the assertion of general personal jurisdiction over nonresident defendants. In *Wright v. American Standard, Inc.,* 637 F.Supp. 241 (E.D.Pa.1985), one of the defendants, Springfield Hilton, Inc. ("Springfield") of Springfield, Virginia, moved this court to dismiss the complaint against it pursuant to Fed.R.Civ.P. 12(b)(2).[2] In support of its mo-

---

**2.** Plaintiffs, hotel guests, sued a nonresident hotel franchisee for injuries suffered when one of the

tion to dismiss, Springfield submitted an affidavit by its general partner in which he stated that the hotel had no sales representatives in Pennsylvania, did not ship goods into the state, had no place of business in the state and did not advertise or solicit business in Pennsylvania. The plaintiffs countered with the deposition testimony of Springfield's general manager who stated that the franchiser of the hotel, Hilton Inns, Inc. ("Hilton"), handled bookings for Springfield through its Philadelphia and Pittsburgh offices and that Springfield was listed in a nationally distributed "Hotel–Motel Red Book". In addition, plaintiffs also submitted an affidavit stating that their secretary used this Red Book to call Springfield and make their reservations.

In essence, plaintiffs based their general jurisdiction argument upon the claim that Hilton, as Springfield's franchiser, acted as Springfield's business agent. This court disagreed. This court also noted that Springfield did little business outside the Washington, D.C. metropolitan area therefore, the plaintiffs did not meet the systematic and continuous conduct of business in Pennsylvania requirement of 42 Pa.Cons.Stat.Ann. § 5301.

In the present matter, plaintiff's evidence which purportedly shows that Summit conducted business in Pennsylvania is less convincing then that presented in *Wright.* For example, in *Wright,* plaintiffs submitted evidence that their secretary actually relied upon a national directory to make their hotel reservations. Here, plaintiff submitted evidence of the existence of a national directory but submitted no evidence that the travel agent relied upon this directory to make the church group's reservation in Lumberton. Also, in *Wright,* plaintiff submitted evidence that Hilton had two Pennsylvania offices to handle reservations for Pennsylvania residents. Here, plaintiff has not submitted any evidence that Ramada has offices in Pennsylvania to assist Pennsylvanians. If the evidence submitted in *Wright* did not convince this court that it could properly exercise personal jurisdiction over the nonresident hotel franchisee defendant then my exercise of personal jurisdiction over Summit also would be improper.[3]

As for the question of advertising and jurisdiction, this court's more recent holding in *Garofalo v. Praiss, D.D.S.,* 1990 WL 97800 (E.D.1990) indicates that a nonresident defendant's advertising does not, by itself, satisfy the systematic and continuous conduct of business requirement of § 5301. This court, in *Garofalo,* clearly states that " '[a]n advertisement seeking business in [a non-forum state], even had it been in an exclusively Pennsylvania directory would not, by itself,

---

plaintiffs slipped in a hotel bathtub.

**3.** Plaintiff relies upon this court's decision in *Gavigan v. Walt Disney World Co.,* 630 F.Supp. 148 (E.D.Pa.1986). In *Gavigan,* the plaintiffs, Pennsylvania residents, brought a diversity action seeking recovery for injuries they suffered in a motor vehicle accident at Walt Disney World in Florida. This court concluded that Walt Disney World's conduct in Pennsylvania was continuous and substantial and supported the court's exercise of personal jurisdiction. Walt Disney World's activities within this state included four full page advertisements in the Philadelphia Inquirer, advertisements running on Philadelphia television stations, a six month advertising campaign specifically aimed at Philadelphia residents, advertising an "800" number for use by Pennsylvania residents, conducting a "Disney Salutes Philadelphia" campaign, bestowing honorary Walt Disney World citizenship on then Philadelphia Mayor Goode and contracting with the John Wanamaker store to display Disney World exhibits.

There is an obvious disparity between the amount of evidence presented in *Gavigan* to support this court's finding of personal jurisdiction and the amount presented by plaintiff to support my exercise of jurisdiction over Summit. Still, plaintiff relies upon the *Gavigan* decision for her proposition that my exercise of jurisdiction over Summit is proper.

Plaintiff maintains that like Disney World, Ramada directed its advertising campaign at Pennsylvania residents. This assertion is faulty for three reasons. First, the parties have not contested my exercise of jurisdiction over Ramada. Second, plaintiff has not put forth any evidence that Ramada's advertising campaign was specifically geared towards attracting Pennsylvania residents to use any of its hotels or franchisee's hotels, much less the Ramada Inn of Lumberton. The only evidence submitted by plaintiff indicates that Ramada does some national advertising via a national directory and an "800" telephone number. Finally, because the real issue here is my exercise of jurisdiction over a franchisee and not over the national franchisor, the holding in *Gavigan* is not conclusive.

constitute 'continuous and substantial' business activity.' " *Garofalo*, 1990 WL 97800 at 2; quoting *Reliance Steel Products Co. v. Watson, Ess, Marshall, & Enggas*, 675 F.2d 587, 589 (3d Cir.1982).[4] This court noted that even if the defendant's television appearances were primarily for advertisement purposes they did not establish that he was targeting the Pennsylvania market nor did they render it foreseeable to him that he could be haled into this court. *Garofalo*, 1990 WL 97800 at 2.

Plaintiff essentially presented no evidence that Summit conducted any business in Pennsylvania, rather, she created an agency argument in order to obtain jurisdiction over Summit based upon Ramada's activities in Pennsylvania. Apparently, she relies upon the language of § 5322(a) which states that "[a] tribunal of this Commonwealth may exercise personal jurisdiction over a person ... who acts directly or by an *agent*, as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth...." (emphasis added).

As support for this agency argument, plaintiff relies upon the Fourth Circuit case of *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156 (4th Cir.1988) and this court's decision in *Drummond v. Hilton Hotel Corp.*, 501 F.Supp. 29 (E.D.Pa.1980). The issue in both of these cases is whether a national hotel franchisor could be held liable on an agency theory where a hotel guest of a franchisee hotel is injured.

If plaintiff in our case were arguing that Ramada should be held liable under an agency theory for the drowning of Allegra Mack at the franchisee Ramada Inn of Lumberton than these cases certainly would support that argument. The issue here, however, is whether the court may assert jurisdiction over Lowe, Johnson and Summit when Ramada concedes that jurisdiction over it is proper. If I accept plaintiff's agency argument then anytime the franchisee of a national franchise is sued, jurisdiction may lie anywhere that jurisdiction over the franchisor itself would lie. This does not comport with the requirements of due process and the

minimum contacts test as articulated in *World-wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Hanson*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Because plaintiff is unable to show that Summit systematically and continuously conducts business in Pennsylvania, this court may not exercise general personal jurisdiction over Summit.

2. Lowe and Johnson—the individual defendants and general jurisdiction

■ Plaintiff has not presented any evidence to suggest that Lowe or Johnson were served in Pennsylvania, resided in Pennsylvania at the time this cause of action began or consented to suit here. 42 Pa.Cons.Stat. Ann. § 5301(a)(1). In fact, the pleadings and all the evidence presented by plaintiff indicates that Lowe and Johnson are not Pennsylvania residents, were not Pennsylvania residents at the time this lawsuit began did not consent to suit here.

Moreover, in order to establish personal jurisdiction over Lowe and Johnson, as individuals, for doing business in Pennsylvania plaintiff must show not only that they did business in this state as set forth in 42 Pa.Cons.Stat.Ann. § 5322 but also that the business they did was done by them for themselves and *"not for or on behalf of the corporation."* *Bucks County Playhouse*, 577 F.Supp. at 1210; quoting *Techno v. Dahl Assoc., Inc.*, 521 F.Supp. 1036 (W.D.Pa.1981). Plaintiff has not met either of these requirements. Therefore, this court does not have general personal jurisdiction over Lowe and Johnson.

3. Specific jurisdiction

■ In order to determine whether specific personal jurisdiction exists, I must determine whether Fields' claim is " 'related to or arises out of the defendant's contacts with the forum.' " *Mellon Bank*, 960 F.2d at 1221; quoting *Dollar Sav. Bank v. First Sec.*

---

4. In *Garofalo*, this court refused to exercise personal jurisdiction over a New Jersey dentist solely because he appeared on a Pennsylvania television station on three occasions.

*Bank,* 746 F.2d 208, 211 (3d Cir.1984). The key to this inquiry is whether the "minimum contacts" test first articulated in *International Shoe,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), is met. The purpose of this test is to prevent parties from being subject to "the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985); quoting *International Shoe,* 326 U.S. at 319, 66 S.Ct. at 160. Thus, where, as here, a court seeks to assert specific personal jurisdiction over a nonresident defendant due process considerations require that the defendants have "'purposefully directed'" their conduct towards residents of the forum state and that the litigation itself arises from the alleged injuries which were caused by or related to these activities in the forum state. *Burger King,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528; *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).

In order to comply with the requirements of due process, I may not exercise personal jurisdiction over the non-resident defendants unless the minimum contacts between the defendants and Pennsylvania are such that "traditional notions of fair play and substantial justice are not offended." *Gavician v. Walt Disney World Co.,* 630 F.Supp. 148, 150 (E.D.Pa.1986). *Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). This rule exists to keep defendants from having to bear the burden of litigating in distant and inconvenient forums and to prevent states and their courts from overstepping the boundaries imposed upon them as "coequal sovereigns in a federal system." *World–Wide Volkswagen,* 444 U.S. at 291, 100 S.Ct. at 564, 62 L.Ed.2d 490 (1980).

Defendants' contacts with this state fail to meet these minimum contacts standards. There is no evidence which indicates that these defendants purposefully directed their conduct or activities at any Pennsylvania residents. Additionally, there is no evidence that these defendants have ever been to

Pennsylvania, telephoned anyone in Pennsylvania, mailed anything to anyone in Pennsylvania or had any other contact with Pennsylvania.

Plaintiff has not put forth evidence to support a finding that this court properly may exercise either general or specific personal jurisdiction over Lowe, Summit or Johnsonn. Accordingly, an order follows which dismisses them from this case.