Florence and Albert WEINTRAUB

v.

WALT DISNEY WORLD COMPANY.

Civ. A. No. 93–451.

United States District Court,
E.D. Pennsylvania.

June 28, 1993.

Eric Zajac, Kosseff & Chaiken, Philadelphia, PA, for plaintiffs.

Brian S. Mudge, Drinker Biddle & Reath, Philadelphia, PA, for defendant.

## MEMORANDUM

BARTLE, District Judge.

Plaintiffs, Florence and Albert Weintraub (the "Weintraubs"), have brought this action based on diversity of citizenship against defendant, Walt Disney World Company ("Dis-

ney") doing business as Disneyland Park.[1] Plaintiff, Florence Weintraub, allegedly sustained injuries on the "Typhoon Lagoon" ride at Disney World in Florida. Defendant has moved to dismiss plaintiffs' complaint, pursuant to Rule 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure, because of a lack of personal jurisdiction and improper venue.[2] Disney also seeks dismissal under Rule 12(b)(4) for insufficiency of process and Rule 12(b)(5) for insufficiency of service process based on a lack of jurisdiction.

■ Once a defense challenging personal jurisdiction has been raised, the plaintiffs bear the burden of proving by a preponderance of the evidence, by way of affidavits or otherwise, that the defendant did have sufficient forum contacts for the court to exercise personal jurisdiction. *Mellon Bank (East) PSFS, National Association v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992); *Carteret Savings Bank v. Shushan,* 954 F.2d 141, 146 (3d Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 61, 121 L.Ed.2d 29 (1992).

■ Rule 4(e) of the Federal Rules of Civil Procedure authorizes a federal district court to exercise personal jurisdiction over non-resident defendants like Disney to the "extent permissible under the law of the state where the district court sits." *Mellon Bank,* 960 F.2d at 1221. *Accord North Penn Gas v. Corning Natural Gas,* 897 F.2d 687, 689 (3d Cir.) (per curiam), *cert. denied,* 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990). The reach of state law, of course, must not extend beyond what Due Process allows. *Van Buskirk v. Carey Canadian Mines Ltd.,* 760 F.2d 481, 489–490 (3d Cir.1985); *Wims v. Beach Terrace Motor Inn, Inc.,* 759 F.Supp. 264, 265 (E.D.Pa.1991). Under the Due Process Clause of the Constitution, a state may exercise personal jurisdiction over a non-resident

defendant if its minimum contacts with a forum are "such that the maintenance of [a] suit [there] does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quotation omitted).

Under Pennsylvania's long-arm statutes there are two potential bases for the exercise of personal jurisdiction over a non-resident corporate defendant. First, a court may exercise personal jurisdiction over a corporation to the extent that the cause of action arises out of the corporation's transaction of business within Pennsylvania. 42 Pa.Cons. Stat.Ann. § 5322 (Supp.1992).[3] *See also Mellon Bank,* 960 F.2d at 1221; *North Penn Gas,* 897 F.2d at 690. In this case it is acknowledged that, because plaintiffs' accident did not arise from any contact of defendant with the forum, the Court cannot exercise specific jurisdiction over defendant. *See Bork v. Mills,* 458 Pa. 228, 329 A.2d 247 (1974). Accordingly, jurisdiction exists only if defendant Disney has had sufficient contacts with the Commonwealth so that the Court has general jurisdiction over defendant.

■ General jurisdiction under 42 Pa. Cons.Stat.Ann. § 5301 is grounded on the defendant's general activity within Pennsylvania. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984); *Gehling v. St. George's School of Medicine, Ltd.,* 773 F.2d 539, 541 (3d Cir.1985). Personal jurisdiction may exist over a non-resident corporate defendant if that corporation carries on a "continuous or systematic part of its general business within this Commonwealth." 42 Pa.Cons.Stat.Ann. § 5301(a)(2)(iii). While only one forum related contact may be sufficient to exercise spe-

---

1. Plaintiffs' action was initially against both Disney and the Compri Hotel ("Compri"). However, by stipulation dated March 8, 1993, which was approved by this Court on March 9, 1993, Compri was dismissed from the action.

2. Rule 12(b)(2) and (3) of the Federal Rules of Civil Procedure provides that the following defenses may, at the option of the pleader, be made by motion:
   (2) lack of jurisdiction over the person;

(3) improper venue.

3. This statute provides in pertinent part that:
   (a) General rule.—A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person:
   (1) Transacting any business in this Commonwealth.
   *Id.* at § 5322(a)(1).

cific personal jurisdiction under § 5322, substantially more contacts with the forum are required before a court properly may exercise general personal jurisdiction. *See also Reliance Steel Products Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir.1982). If general personal jurisdiction exists as a result of the defendant's activities in a forum, there is jurisdiction over that defendant regardless of whether the claim for relief has any relation to the forum. *Mellon Bank*, 960 F.2d at 1221.

The Pennsylvania long-arm statute under § 5322 specifically provides for the exercise of personal jurisdiction over a corporate nonresident defendant "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.Cons.Stat.Ann. § 5322(b) (Supp.1992). The courts have held that the reach of both Pennsylvania long-arm statutes is "co-extensive" with the Due Process Clause of the Fourteenth Amendment. *Mellon Bank*, 960 F.2d at 1221; *North Penn Gas*, 897 F.2d at 690; *Van Buskirk*, 760 F.2d at 490. *See also Narco Avionics, Inc. v. Sportsman's Market, Inc.*, 792 F.Supp. 398, 403 (W.D.Pa.1992); *Wims*, 759 F.Supp. at 266.

In the leading Third Circuit case concerning general jurisdiction, *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539 (3d Cir.1985), the Court of Appeals held that general jurisdiction did not exist over the defendant, a Grenada based college, for personal injuries that were sustained in Grenada, because the college's contacts with Pennsylvania were not "substantial and continuous." *Id.* at 543. The court reached this conclusion in a personal injury action based on events that took place in Grenada even though the defendant college had advertised in non-Pennsylvania newspapers that circulated Pennsylvania,[4] obtained 6% of its students from Pennsylvania, participated in a joint program with a Pennsylvania college, and Pennsylvania residents annually paid

several hundred thousand dollars worth of tuition to the college. *Id.* at 542–543.

Notwithstanding *Gehling*, plaintiffs rely on two Pennsylvania district court cases to find personal jurisdiction. The first is *Gavigan v. Walt Disney World, Inc.*, 630 F.Supp. 148 (E.D.Pa.1986), *on reconsideration*, 646 F.Supp. 786, in which the evidence demonstrated the following jurisdictional contacts on behalf of the defendant in Pennsylvania: (1) engaging in a promotional campaign at the John Wanamaker Department Store in Philadelphia; (2) having an "800" telephone number which interested persons from Pennsylvania could use to make reservations; (3) sending several representatives to Philadelphia to bestow honorary Disney World citizenship on Philadelphia Mayor Wilson Goode; (4) advertising on Pennsylvania television stations and in newspapers; (5) implementing a promotional campaign directed at Philadelphia; and (6) sending Disney's chef to participate in the "Book and Cook Festival" in Philadelphia. 630 F.Supp. at 152.

In the second decision relied upon, *Cresswell v. Walt Disney Productions*, 677 F.Supp. 284 (M.D.Pa.1987), general jurisdiction was found because the defendant: (1) advertised on Pennsylvania television stations and in Pennsylvania newspapers; (2) provided a toll-free telephone number for Pennsylvania residents to call; (3) regularly visited Keystone Junior College to recruit employees; (4) sent representatives to Philadelphia to encourage Pennsylvania citizens to visit Walt Disney World; (5) conveyed honorary Disney World citizenship on the Mayor of Philadelphia; (6) sold Walt Disney Company products and services in Pennsylvania; and (7) broadcast a Walt Disney channel in Pennsylvania. *Id.* at 285.

In contrast, the defendant Disney relies on nine decisions, six of which hold that Disney, the very defendant in this case, is not subject to personal jurisdiction in the Commonwealth.[5] The strongest of these cases from defendant's point of view are *Wincek v. Walt*

---

**4.** *The New York Times* and *The Wall Street Journal.*

**5.** All of the decisions involving Disney were instituted by a plaintiff who was injured as a result of an accident which occurred while visiting Walt Disney World in Florida.

*Disney World Company,* No. 92–7214, 1992 WL 390868 (N.D.Ill. Dec. 15, 1992); *Schulman v. Walt Disney World Company,* No. 91–5259, 1992 WL 38390 (E.D.Pa. Feb. 25, 1992) (Waldman, J.); *Vacca v. Walt Disney World Company,* No. 91–4110, 1992 WL 5181 (D.N.J. Jan. 6, 1992); *Fields v. Ramada Inn, Inc.,* 816 F.Supp. 1033 (E.D.Pa.1993).

In the *Wincek* case, the Court found insufficient minimal contacts to assert personal jurisdiction since the defendant: (1) was not listed in any Illinois phone directory; (2) conducted no business in Illinois; (3) had no officers, directors, agents or employees in the state; (4) had no office mailing address, or place of business in Illinois; (5) owned no real property or bank accounts in the state; (6) had neither incurred nor paid Illinois taxes; and (7) had not appointed an agent for service of process in Illinois. *See id.*

In *Schulman* the facts establishing lack of personal jurisdiction were that the defendant: (1) sent a chef to participate in a cooking festival in Philadelphia five years before plaintiff's accident; (2) promoted Walt Disney World by conveying an honorary award on the Mayor and conducting a public relations event at John Wanamaker Department Store five years before the plaintiff's accident; and (3) engaged in local advertising. *See id.*

In *Vacca,* the defendant's jurisdictional contacts were limited to a national advertising campaign and to informational brochures which it sent to travel agents. *See id.*

Lastly, in *Fields,* the court held that the "continuous and systematic contacts" required for general jurisdiction do not exist even where the defendant motel: (1) was listed in a Ramada Inn world-wide directory; (2) could be reached via a nationwide "800" toll-free number; (3) participated in Ramada Inn's national advertising fund; and (4) plaintiff's hotel reservation was made through a Philadelphia travel agency.[6]

■ The known facts of the case at hand do not fit squarely with either the cases relied upon by the plaintiffs or with the defendant's supporting case law. However, they tip in favor of finding jurisdiction because they are more comparable to *Gavigan* and *Cresswell,* than *Gehling* and the cases upon which defendant relies.

The uncontested responses to interrogatories submitted on behalf of defendant Disney establish the following pertinent facts:

(1) the Walt Disney Company (hereinafter "W.D. Company"), Disney's parent corporation, owns Disney as a "wholly-owned" subsidiary (defendant Walt Disney Company's response to plaintiffs' jurisdiction contact interrogatories at pp. 4–5);

(2) W.D. Company licensed copyrighted fanciful characters and owns and operates Disneyland Park (*id.* at p. 5);

(3) three officers or directors of W.D. Company are directors or officers of Disney Company (*id.* at p. 5);

---

**6.** The facts of the remaining cases upon which defendant relies are substantially weaker. In *Cunningham v. Walt Disney Company,* 1991 WL 22062 (E.D.Pa.), much of the information offered by the plaintiffs in affidavits to assert personal jurisdiction was incompetent and inadmissible. Furthermore, the primary focus of *Cunningham* was on the activities of defendant's parent company and subsidiaries—not the actions of the defendant itself. In *Piccinini v. Kraft, Inc. and Walt Disney World Company,* 1986 WL 4321 (E.D.Pa.), the plaintiff's affidavit was clearly insufficient to establish jurisdiction since 20 of 29 paragraphs were hearsay and, more importantly, none denied the defendant's assertions. The remainder was aimed almost entirely at the defendant's alleged advertising activities in Pennsylvania and fell short of doing business in the venue sense. *Id.* at 1. In *Jennings v. Walt Disney World, Inc.,* 1992 WL 188374 (E.D.Pa.), the plaintiff's argument rested primarily on activities undertaken by defendant's parent corporation and several of its subsidiaries. *Id.* at 2. In *Giangola v. Walt Disney World Company,* 753 F.Supp. 148 (D.N.J.1990), the plaintiff's argument was based solely on newspaper and television advertisements without mention of any other contacts with the forum state. Lastly, in *Wright v. American Standard, Inc.,* 637 F.Supp. 241 (E.D.Pa.1985), general jurisdiction was not found where bookings were handled by a franchisor, the franchisor had two business offices in Pennsylvania, and the hotel had a listing in the national "Hotel–Motel Red Book." The instant case does not concern a franchisor/franchisee relationship in any respect. Further, the existence of "college relations," "public relations," or "professional staffing activities" in the Commonwealth were not even noted in *Wright.*

(4) the incident in question occurred on or about September 19, 1990;

(5) in 1989, the year preceding the incident giving rise to this suit, employees of Disney traveled to Pittsburgh to conduct a business seminar at Thompson Corporation (*id.* at p. 6);

(6) from 1990 through 1993, a Disney representative or representatives visited locations throughout the eastern, central, and western Pennsylvania "for the purpose of college relations" (*id.* at pp. 6–8);

(7) from November, 1991 until at least March, 1993, representatives of Disney visited eastern, central, and western Pennsylvania "for the purposes of professional staffing" (*id.* at p. 8);

(8) from March, 1989 through March, 1990, representatives of Disney's publicity staff visited eastern, central, and western Pennsylvania "for the purposes of publicity" (*id.* at pp. 8–9);

(9) Disney regularly promotes Disneyland Park through newspapers and magazines circulated in Pennsylvania and on television programs and commercials aired in Pennsylvania (*id.* at pp. 13–15);

(10) the Disney resort is marketed by distribution of brochures and other mailings containing promotional materials to travel agents (*id.* at p. 16); and

(11) Disney maintains a national "800" number for the use of travel agents only, which include Pennsylvania travel agents (*id.* at p. 13).

Based on the foregoing, this Court finds that the plaintiffs have demonstrated sufficient forum contacts on the part of Disney to permit this Court to exercise general jurisdiction.[7] Defendant's publicity, professional staffing, and college relations activities have been continuous and have extended throughout the Commonwealth. At least one of these activities began one year before plaintiff's accident took place on or about September 19, 1990. Others occurred during that year and the year immediately following.

Further, even if Disney's visits to the Commonwealth "were indiscrete, short-term intervals, in selected locations solely for the purposes of college relations, professional staffing, or publicity," as defendant contends, the numerosity of these visits over such a short period of time establishes "continuous and systematic" contacts, not isolated contacts, with the forum state. *See Provident National Bank v. California Federal Savings and Loan Ass'n,* 819 F.2d 434, 437 (3d Cir.1987) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)).

The defendant's reliance on *Wincek, Schulman,* and *Vacca,* in support of its motion to dismiss, is misplaced and easily can be distinguished from the present case. First, *Wincek* did not concern Disney's public relations activities or "college relations" activities in the forum. The focus of *Wincek* was on advertising and on activities of defendant's parent company and subsidiaries. Further, Disney was not listed in any Illinois phone directory in *Wincek,* whereas in the present case, an "800" number was maintained for the use of Pennsylvania agents. Likewise, the *Schulman* decision focused on advertising activities, limited forum contacts five years prior to the incident giving rise to the suit, and on activities of the parent corporation. In contrast, the present case has extensive Disney public relations activities in Pennsylvania, advertising directed at Pennsylvania—not the general public, and a toll-free telephone number for Pennsylvania travel agents which makes it easier for Pennsylvania residents to arrange travel accommodations at Walt Disney World. Similarly, in *Vacca* the discussion concentrated on a national advertising campaign and informational brochures sent to travel agents. The present case deals with a regional, not national, advertising campaign, an "800" telephone number for Pennsylvania travel agents which makes it more convenient for Pennsylvania residents to organize a visit to Walt Disney World, and pervasive public relations activi-

---

**7.** In its reply brief defendant complains that there is no support in the record for plaintiffs' assertions that Disney "sells Disneyland Park tickets in Pennsylvania" and that "Disney products and services are sold in Pennsylvania." We agree. These putative, unsupported facts do not enter into this Court's decision finding the existence of jurisdiction.

ties in Pennsylvania for the purposes of college relations, professional staffing, and publicity.

Additionally, defendant's reliance on *Fields* is ineffective. *Fields* prevented a plaintiff from asserting jurisdiction over a franchisor by suing the franchisee of a national franchise—as such a result would be inconsistent with the requirements of due process. Instantly, no franchisor/franchisee relationship exists. Further, in *Fields* there is no mention of "college relations," "public relations," or "professional staffing activities" in the forum state.

The evidence establishes that this Court may properly exercise general personal jurisdiction over the non-resident corporate defendant Disney. It is not unreasonable for Disney to be expected to be "hauled into court" in the Commonwealth. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d, 490 (1980).[8]

### ORDER

AND NOW, this 28th day of June, 1993, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of defendant, Walt Disney World Company, to dismiss pursuant to Rule 12(b)(2) through Rule 12(b)(5) of the Federal Rules of Civil Procedure, is DENIED.

---

8. Because the Court has personal jurisdiction over defendant Disney, there is no question that venue was proper, that process was· sufficient, and that the service of process was sufficient. With respect to the question of venue, 28 U.S.C. § 1391(a), relating to diversity cases, provides that venue is proper in a judicial district:
   (1) where a defendant resides if all the defendants are from the same state;
   (2) in which a substantial number of the events giving rise to the claim occurred, or a substantial part of the property which is the subject matter of the action is situated; or (3) where the defendants are subject to personal jurisdiction at the time the action is commenced.